## Mercer County *against* Coovert.

Upon a contract to guarantee the payment of a certain sum of money, in consideration of the building of a bridge by the county at a place fixed by a report of viewers, if the location be changed, there can be no recovery.

ERROR to the District Court of *Mercer* county.

Mercer county for the use of Alfred and Moses Corey against Thomas Coovert and others. By a proceeding under the Act of Assembly in the Court of Quarter Sessions, viewers located and reported favourably to the building of a bridge at a particular point over the Mahoning river. This report was approved by the grand jury and the court. After which the defendants signed an agreement to guarantee the payment of $1300 to the commissioners of the county to aid in its construction. The commissioners went to the place with a view of examining the ground, and there discovered among the citizens a diversity of opinion with regard to the place of location; some were in favour of the point fixed by the viewers, others for a point 100 rods below, and others for 50 rods above. The commissioners agreed that the place fixed by the viewers was not the proper one, but they would have the bridge built either above or below; and for the purpose of determining this, they submitted the question to be decided by the citizens, by an election at which any one should have a vote who would pay one dollar towards the construction of the bridge. The

election was held, and a decision was thereby made in favour of the site above; at this election it was proved that children had voted. Immediately one of the defendants, at the election, objected to the course, and endeavoured to prevent it; and after it was held, gave notice to the commissioners of his · objection, and requested that his name should be withdrawn from the guaranty. But this was refused. The commissioners entered into a contract with Alfred and Moses Corey to build the bridge for $3800, at the point fixed by the election; in part payment of which, this guaranty, and a subscription paper for part of the amount, were transferred to the contractors. But part of the money subscribed was paid, and this suit was brought upon the guaranty to recover the balance.

THOMPSON (President) instructed the jury, that upon this state of facts the plaintiff was not entitled to recover; that the change of location of the bridge by the commissioners, especially in view ·of the manner and circumstances under which it was made, ab-solved the defendants from their contract.

*Stevenson*, for plaintiff in error, cited 2 *P. R.* 471.

*Patterson* and *Pearson*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—What is the contract on which the defendants were sued? They offered to pay a specified sum towards the expense of a bridge at a particular spot, the plaintiff paying the residue. The bridge was not built at the spot, but at another less advantageous to some of the defendants. And why was the site of it changed? Not because it was an impracticable one, but because the expense of a bridge there would have been greater than the county could conveniently bear. But had the fact been otherwise, it would not have entitled the plaintiff to dispense with the condition, and yet hold the defendants to their offer to pay; for they had not offered to contribute to the expense of a bridge at any other place. But the difference in the amount of the expense induced the commissioners to depart from the terms of the defendants' offer, and to propose two other sites, leaving it to the people to choose between them by an election at which boys of the age of five years were admitted to vote; and yet the defendants are gravely supposed to be bound by their offer, though the condition on which it was made has been put aside by this miserable farce! The case bears no resemblance to *Irvin* v. *The Turnpike Company*, in which the contract of subscription to the stock was unconditional and prescribed by statute. In that case, the commissioners to receive signatures had no power to act upon stipulations, or receive conditional subscriptions; and the defendant knew it. His written promise to pay was absolute; and as he had

[Mercer County v. Coovert.]

entered into it with his eyes open, he was held to have done so without any mental reservation incompatible with the paramount and inherent right of the State to make alterations in the plan of the route for the public good. And to have held otherwise, would have given the other subscribers to the stock the same right to refuse payment of their instalments, whether the alteration were detrimental to their property to more than the value of a farthing, or perhaps not even so much. Here, however, the terms of the contract were originally within the control of the defendants, from whom the overture came; and they expressly inserted a fundamental condition in it, as they had a right to do. Had this condition not been expressed, but tacitly understood, the case would have come nearer to *Irvin* v. *The Turnpike Company ;* but still it would·have been open to the defendants to show that both parties had acted on an implicit stipulation that the bridge should be built at the particular place; a measure that was not open to Mr Irvin, who was bound to know that the commissioners in that case had no power to make stipulations either express or implied, and that it was an act of gross imprudence to rely on them. In this case the whole was a matter of compact, restricted as to terms only by the consent of the parties; and as the defendants were at liberty to insert a fundamental condition in their contract, they were certainly at liberty to insist on it. That each of them ratified the change made by the commissioners, has not been seriously contended ; and without showing a joint liability on the part of all, there can be no recovery against them. The other exceptions either are unfounded, or relate to matter of fact which is not examinable here.

Judgment affirmed.