# The Pittsburgh and Steubenville Railroad Company *versus* Biggar.

A subscription to the stock of a railroad company, under the Act of 19th February 1849, made to the commissioners, before the organization of the company, upon condition, that the road should be located on a special route, is to be deemed an absolute subscription, without reference to the condition.

The commissioners have no power to receive any other than unconditional subscriptions, but such conditional subscription is not a nullity; it is the condition that is illegal, the subscription is single and absolute.

ERROR to the Common Pleas of *Washington county*.

This was an action of *assumpsit* by the Pittsburgh and Steubenville Railroad Company against Andrew Biggar, to recover nine unpaid instalments of $10 each, on ten shares of the stock of the company, subscribed for by the defendant, with interest thereon.

The following facts were stated and agreed upon by the parties, in the nature of a special verdict:

"The Pittsburgh and Steubenville Railroad Company was incorporated by an Act of Assembly, approved March 24th 1849, and letters patent were issued by the governor, dated July 22d 1851. Before the issuing of the letters patent, the defendant, Andrew Biggar, resident in Washington county, subscribed ten shares to the capital stock of the company, in a book provided for that purpose by the commissioners named in the act of incorporation, which subscription is in the words and figures following:—

" 'We, the undersigned, agree to pay to the Treasurer of the Pittsburgh and Steubenville Railroad Company, the sums set opposite our respective names, to the stock of said company; provided, that no subscription shall be considered as due and valid, until the sum of $200,000 shall have been *bonâ fide* subscribed on the books of the company; provided, the road goes within half a mile of Florence.

ANDREW BIGGAR, 10 shares . . . . $500.'

"The name of the said defendant, as a subscriber of ten shares, is contained in the report of the commissioners filed in the State Department, and also in the letters patent. More than $200,000 have been *bonâ fide* subscribed on the books of the said company to the stock thereof. The road of the said company was definitely located on the Harman's creek route, which is more than two miles from Florence, on the 24th day of May 1852. More than ten per centum of the capital stock, exclusive of the conditional subscriptions, was subscribed before the commissioners, and was by them certified to the governor. The defendant, at the time of his said subscription, paid to the commissioners $5

[Pittsburgh and Steubenville Railroad Co. *v.* Biggar.]

on each share of the stock so by him subscribed. On the 7th day of April 1853, the following resolution was adopted by the board, viz.: 'That a committee of three be appointed to make a report as to what is the conditional stock, if any, subscribed to our road in the neighborhood of Florence, that may be made absolute and available by constructing a branch from the main road to the town of Florence, and which could not otherwise be made available to the company, and make report to the board.' A committee was accordingly appointed, but no report was ever made by them. The instalments of stock were called in by the company, and made payable as follows: second instalment payable August 12th 1852; third instalment payable 24th September 1852; fourth instalment payable 1st December 1852; fifth instalment payable 1st January 1853; sixth instalment payable February 1st 1853; seventh instalment payable 1st March 1853; eighth instalment payable 1st April 1853; ninth instalment payable 1st May 1853; and tenth instalment payable 1st June 1853; —each of the said instalments being $5 upon each share of the stock subscribed. The calls of all the said instalments were duly published in Allegheny county; the call for the third instalment was duly published in Washington county, in the Washington Reporter, 15th September 1852; and the call for the fourth and all subsequent instalments was duly published in the same paper, 22d November 1852, and 1st December 1852. The writ of summons in this case was issued on the 26th day of February 1858. After the company was organized, and prior to the 24th day of May 1852, three lines were surveyed by the said company, one of which was by the village of Florence.

"If the court should be of opinion, upon these facts, that the plaintiff is entitled to recover, then judgment to be entered against the defendant and in favour of the plaintiff, for the sum of $450, with interest at such rate, and from such dates, as the court may direct; otherwise, judgment to be entered for the defendant. Both parties reserve the right to sue out a writ of error."

The court below gave judgment for the defendant on the case stated; whereupon, the plaintiffs removed the cause to this court, and here assigned the same for error.

*Craft* and *Hamilton*, for the plaintiffs in error, cited Pittsburgh and Steubenville Railroad Co. *v.* Woodrow, 6 *Pittsburgh Legal Journal* 81; Philadelphia and Westchester Railroad Co. *v.* Hickman, 4 *Casey* 328; 1 *Greenl. Ev.* § 169; 2 *Sim. & S.* 600–6, &c.; *Angel & Ames on Corporations*, 432, 527; 3 *Y. & J.* 80; 8 *Mass.* 299; 7 *Johns.* 112; 5 *Alabama* 787.

*Atcheson & Wilson* and *McKennon*, for the defendant in error,

[Pittsburgh and Steubenville Railroad Co. v. Biggar.]

cited Hotham v. East India Co., 1 *T. R.* 645; Jones v. Barkley, *Doug.* 690; Porter v. Shephard, 6 *T. R.* 668; Adams v. Williams, 2 *W. & S.* 228; McCrelish v. Churchman, 4 *Rawle* 36; Goodwin v. Lynn, 4 *W. C. C. R.* 714; Wright v. Smyth, 4 *W. & S.* 533; 1 *Saund. Pl. & Ev.* 121–2; Shadforth v. Higgin, 3 *Campb.* 385; Thomas v. Cadwallader, *Willes* 498; Campbell v. Jones, 6 *T. R.* 571; 2 *Bl. Com.* 154, 157.

The opinion of the court was delivered by

STRONG, J.—The contract of the subscriber to the stock of a projected canal or railway company, in the books of the commissioners to receive subscriptions, is of a peculiar character. The commissioners are public agents with limited powers. The law prescribes their duty, and declares the form and obligation of every subscription, which they have a right to receive. The only subscription which it recognises, is one which binds the subscriber to pay absolutely, on the call of the company, after its organization. He who proposes to become a member can only become such in one way, and that, the way pointed out by the Act of Assembly. There is no party with whom he can bargain for a change of terms. The policy of the law, as well as its express provisions, require, that all subscribers must come in alike; that none can stipulate for an advantage over others. In this equality, the Commonwealth is interested, and so are all those who embark in the enterprise. The state has a high interest, which the law endeavours to secure. It authorizes the commissioners to receive subscriptions, and individuals to subscribe. It requires that ten per cent. of the authorized capital shall be subscribed, and that $5 on each share of stock shall be paid, before letters patent can issue. The design of these requisitions doubtless is, to render it reasonably certain that the projected work will be done, before the Commonwealth will confer the large powers and exclusive privileges which are sought to be obtained. The public benefit anticipated from the construction of the projected improvement, is the inducement to the grant of a charter, and therefore some security is demanded that the consideration for the grant shall not fail. Before letters patent can be issued, the commissioners must certify, under their hands and seals, the names of the subscribers, the number of shares subscribed by each, and that $5 on each share have been paid. When that is done, the governor is required to issue letters patent to the subscribers, constituting them, and, if the subscription be not full at the time, those who may afterwards subscribe, into a body corporate.

Conditional subscriptions are not contemplated. They would be a fraud upon the Commonwealth. It is the duty of the commissioners to certify the name of every subscriber, with the number

[Pittsburgh and Steubenville Railroad Co. *v.* Biggar.]

of shares subscribed by him, and on the faith of their certificate, the charter is granted. They are not required to certify the form or any conditions of subscription, for the law having declared what the contract shall be, excludes the possibility of conditions. If the commissioners may receive subscriptions clogged with terms unknown to the statute, then the securities which the law demands, as prerequisites to issuing the letters patent, may have no existence. Then the Commonwealth may be defrauded out of the franchise; for, instead of there being ten per cent. of the authorized capital pledged for the prosecution of the work, and for the fulfilment of the contract of the company with the state, no part of it may be available for any such purpose. The subscribers may obtain the charter without assuming any liability to invest a dollar. For unless the conditional subscription is a nullity, it must be certified; and if the commissioners may not receive conditional subscriptions, it is equally true, that no person can attach conditions to his subscription. The law offers him membership in the proposed company, on his absolute subscription and payment of $5 on each share. He must secure membership in that way, and on those terms, or not at all. If he may add a condition to his subscription, by which it becomes less than an absolute engagement to pay, he becomes a party to the fraud practised upon the Commonwealth, for the commissioners are the agents of the subscribers, as well as of the state, to certify each subscription.

Besides, a stipulation for a particular route of the projected canal or railway is, in other respects, against the policy of the law, and therefore illegal. The law casts upon the board of directors, who may be chosen after the organization of the company, the selection of the route. In the choice of this board, each subscriber is to have a voice proportionate to the amount of his stock. The state is interested, as well as the stockholders in the corporation, in having this board exercise an unbiassed judgment. But a stipulation in a subscription, in favour of a particular route, if it have any efficacy, tends to deprive the state and the stockholders of the benefits of such untrammeled selection, and it is conceivable, that it might entirely destroy the public utility of the enterprise.

If it be urged, that the construction of the road over a designated route, may be regarded as a part of the consideration for the promise to pay the subscription, it does not alter the case; such a stipulation is none the less illegal. But this is an erroneous view of the matter. The law offers to the subscriber membership and stock, as the consideration for his subscription, and it offers no more. If he could secure more, it would be a wrong to the other subscribers, not less than if the stipulation were, that he should have a certificate for two shares *of stock*, on payment

[Pittsburgh and Steubenville Railroad Co v. Biggar.]

for one. The rights of all subscribers are necessarily equal; nor can there be any such thing as conditional membership; either the defendant in error became a corporator on the issuing of the letters patent, by virtue of his subscription, and the payment of five dollars for each share, or the subscription amounted to nothing. If the contract was binding, he was entitled to vote for directors, and was entitled to the stock, as he certainly would have been, it is admitted, if the road had been built within half a mile of Florence. But suppose that, including the subscription of the defendant, the whole authorized capital had been taken. Will it be contended, that more might have been received, and the defendant's subscription displaced? If it might, then no certificate could have been issued to him; then he would be, at the same time, a member, and not a member. If it might not, then it would be only because the membership of the company was full, because the defendant's subscription made him a member; and if he was a member, certainly a failure to adopt the route stipulated for would not divest his membership. It would not authorize the company to forfeit his stock, and while a stockholder, he continued a member.

Was then the subscription a nullity? Certainly, it was operative for some purposes. It enabled the commissioners to receive and to retain the five dollars paid upon each share subscribed, and it aided in obtaining the letters patent. On the faith of it, the Commonwealth parted with the franchise conferred upon the company. If such subscriptions, with such conditions, are invalid, then the whole capital of a company might be withheld, even after charter granted, and the objects of the grant thus be entirely defeated. It is not for the defendant to say, that his subscription is a nullity; that he has assumed no liability, when his act induced the grant of the charter, and fastened upon his co-corporators the obligation to pay the amount of their subscriptions. It is the condition of the subscription, which is the illegal part; it is that which is repugnant to the nature of a subscription, and which is in conflict with the policy of the law, and therefore the defendant cannot assert it.

At most, also, the stipulation in the contract of subscription was a condition subsequent; certainly, subsequent to membership in the company, and subsequent also to the liability to pay. The thing provided for could only be determined, after the organization of the company. The words of the condition show this. The defendant promised to pay, "provided the road goes within half a mile of Florence." But payment of the subscriptions was necessary to enable the road to go anywhere; no other means was provided for either the location or construction of the road; payment was, therefore, necessarily antecedent to a compliance

with the condition. But if it was a condition subsequent, and illegal, as we have endeavoured to show, then it is void, and the subscription is in law absolute.

A reference to the adjudicated cases in this state, confirms us in our opinion that such a stipulation as the defendant inserted in his contract of subscription, is wholly inoperative. In Irvin *v.* The Turnpike Company, 2 *Penn. R.* 466, which was an action against an original subscriber to the stock of a turnpike road company, to recover instalments of his subscription, the defendant offered to show that his subscription was induced by a representation of the commissioners, that a bridge over the Susquehanna would be built at a place where it would be advantageous to the defendant's property; that the law fixed it there; that on the faith of this representation he subscribed, but that the location of the bridge was subsequently changed by an Act of Assembly. This was, in substance, an attempt to prove that the subscription was dependent upon a particular location of the bridge, but the court refused to permit him to show any such condition; GIBSON, C. J., in an elaborate opinion, demonstrated, that the benefit which may result to individual property, from the location of a public highway, is no part of the consideration of the contract of subscription, though it may be a motive inducing thereto. If no part of the consideration, it is not easy to see how the selection of another route than that at first contemplated, can be any defence to a promise to pay. The statement of the condition is only a recital of the motive which induced the subscription. The judge also remarked, that the defendant was bound to know that the commissioners, acting under a limited authority, had no power to make conditions, or bind the corporation in a matter not committed to them. He therefore ruled, that the case must be decided on the nature of the contract itself, and that conceded a power in the legislature, or the board of managers, to change the location of the route without affecting the defendant's liability. Nor was the case rested on the ground of the absence of an express stipulation, as is contended here, although there is an expression in the opinion which, at first blush, seems to give countenance to such an idea. The proposition was, to prove an express stipulation, though not in writing, and the objection was not made for that reason; and when afterwards the same judge came to deliver the opinion in Mercer Co. *v.* Coovert, 6 *W. & S.* 70, in showing the difference between other contracts, and those made with commissioners to receive subscriptions to the stock of a public improvement company, he remarked, "The case bears no resemblance to Irvin *v.* The Turnpike Company, in which the contract of subscription was unconditional, and prescribed by statute. In that case, the commissioners to receive signatures

had no power to act upon stipulations, or receive conditional subscriptions, and the defendant knew it." And again : " Had this condition not been expressed, but tacitly understood, the case would have come nearer to Irwin *v.* The Turnpike Company ; but still it would have been open to the defendants to show that both parties had acted on an implicit stipulation, that the bridge should be built at the particular place ; *a measure that was not open to Mr. Irvin, who was bound to know that the commissioners in that case had no power to make stipulations, either express or implied,* and that it was an act of great imprudence to rely on them." The doctrine asserted in Irvin *v.* The Turnpike Company controls the case now before us, and it has repeatedly been recognised and reaffirmed : Gray *v.* The Monongahela Nav. Co., 2 *W. & S.* 161 ; Union Canal Co. *v.* Young, 1 *Whart.* 429. The case of The Cumberland Valley Railroad Company *v.* Baab, 9 *Watts* 460, also recognises it, and clearly points out the distinction between subscriptions to stock made in the books of commissioners, and other contracts.

The case of McConahy *v.* The Centre and Kisacoquillas Turnpike Company, 1 *Penn. R.* 426, at first sight, may appear to be inconsistent with these decisions. It was there ruled, that a parol agreement by a commissioner, that a subscriber to stock might pay in labor, was binding on the corporation, when they sued for the subscription. It must be admitted, that this is hardly reconcilable with the later cases to which we have referred. There, however, the stipulation was not repugnant to the statutory contract of subscription, nor perhaps against the policy of the law. That it was not, was said in Kennedy *v.* The Erie and Wattsburgh Plank Road Company, 1 *Casey* 226. In Crossman *v.* Penrose Ferry Bridge Co., 2 *Casey* 70, while it was admitted, that the fraud of a commissioner would avoid a subscription, it was held, that an unperformed promise would not, although it induced the making of the subscription, nor would his mistaken representations of the cost of the work. But what is a stipulation that the road shall go within half a mile of Florence, more than a promise, and a promise which the commissioners had no right to make, and upon which the defendant knew he could not rely ?

The authorities, therefore, appear to establish that the defendant became an actual subscriber for the stock of the company, and not a mere contractor to subscribe on the subsequent performance of a condition. His engagement was in law absolute, and not rendered contingent, by his express recital of the motive which persuaded him to subscribe. This grows out of the nature of the contract.

When a subscription is received, after the organization of a company, different principles apply. There, a party is in existence with whom the subscriber can stipulate, and then his condi-

[Pittsburgh and Steubenville Railroad Co. *v.* Biggar.]

tional promise can work no fraud upon the Commonwealth, or his co-subscribers.    This distinction is clearly taken in many of our cases.

The judgment of the Court of Common Pleas is reversed, and judgment is ordered to be entered for the plaintiffs for $450, with interest, at the rate of 12 per cent., from the time the calls became payable, to wit, in all, $825.24.