## Shober's Administrators *versus* The Lancaster County Park Association.

68   429
143  268
68      429
38SC  1354

1. A subscription was "for the purpose of purchasing a tract of land, part of the Barry farm, and for such other purposes as we, the subscribers, may agree upon. It is proposed to get an act of incorporation, &c. The money to be expended in purchasing the land, putting up the fences and buildings and the grounds in order." The subscribers met in accordance with a public advertisement, appointed a committee to buy the land, procure a charter, call in subscriptions, &c. They purchased the land, erected fences, &c., obtained the charter, and the deed for the land was made to the corporation. The defendant, an original subscriber, attended no meeting and took no part in any of the proceedings. *Held*, that he was liable for his subscription at the suit of the corporation.

2. The corporation was the legal trustee to receive and administer the fund subscribed.

3. Academy *v.* Robinson, 1 Wright 210, adopted. Strasburg Railroad *v.* Echternacht, 9 Harris 220, distinguished.

May 3d 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lancaster county :* Of May Term 1871, No. 69.

This was an action of assumpsit, commenced September 21st 1869, in which there was a case stated between The Lancaster County Agricultural Park Association, plaintiffs, and Catharine Shober and John A. Shober, administrators, &c., of Emanuel Shober, deceased, defendants.

The claim of the plaintiff was founded on the following paper signed by the decedent with a number of other persons, about September 26th 1868.

"We, the undersigned, agreed to pay amount subscribed to our signatures, for the purpose of purchasing a tract of land containing about 21 acres, lying on the north side of the New Holland turnpike, being a part of the Barry farm, and such other purposes as we, the subscribers, may determine upon. It is proposed to get an act of incorporation making the capital about $20,000 and the shares $100 each; the money to be expended in purchasing the land, putting up the fences and buildings, and the grounds in order."

The whole number of shares subscribed for was 214, of which the decedent subscribed for 5. At a meeting of the subscribers representing 112 shares, assembled on the 12th of October 1868, in pursuance of public advertisement, it was resolved to purchase part of the Barry farm.

"On the 15th of October, the subscribers again met, and the committee reported that they had succeeded in negotiating for the purchase of the Barry property for $12,000. A resolution was then adopted, 'that a committee of eleven subscribers be chosen,

[Shober *v.* Lancaster Co. Park Association.]

whose duty it shall be to procure as soon as possible a charter of incorporation for this association, to purchase the grounds selected for the purposes of the association, to prepare the same for its uses, with the authority to call upon the stock subscribers for such portions of their subscriptions as they may deem necessary, and to make such rules and regulations for the use of the grounds as they may deem fit; their powers to cease as soon as a reasonable time for obtaining and organizing under a charter may have expired.'

"This committee was chosen, and immediately purchased the Barry property for $12,000,—erected fences, buildings, &c., and constructed a track at an entire cost of more than $20,000.

"While performing these duties, the committee also, on March 12th 1869, procured a charter for the association, under the name of 'The Lancaster County Agricultural Park Association,' under which charter and corporate title, the original subscribers, at a meeting held on March 29th 1869, organized and elected officers, and on April 1st 1869, the real estate, which had thus far been held by the committee under an agreement of sale from George K. Reed, was by Mr. Reed deeded to the association under its corporate name.

"At different times the original subscribers (Mr. Shober among them) were called upon to pay in the amount of their subscriptions. Mr. Shober paid nothing in answer to these calls. There is no evidence that he was present or represented at any of the meetings described, and he never received a certificate of stock in the incorporated association.

"If the court should be of the opinion that the plaintiff is entitled to recover, then judgment for the plaintiff for $500, with interest from September 20th 1869; but if not, then judgment for the defendant; the costs to follow the judgment, and either party to be entitled to a writ of error."

The court (Hayes, J.) entered judgment, for plaintiff for $500, with interest from September 20th 1869.

The defendants took out a writ of error, and assigned the entering of the judgment for error.

*J. B. Amwake* (with whom was *R. H. Long*), for plaintiffs in error, cited Strasburg Railroad *v.* Echternacht, 9 Harris 220; Poughkeepsie, &c., Plank Road Co. *v.* Griffin, 24 N. Y. 150; Odd Fellows' Hall Co. *v.* Glazier, 5 Harring. 172; Ives *v.* Sterling, 6 Met. 310; Addison on Contracts 803; Duke *v.* Forbes, 1 Exch. 356; Edinboro' Academy *v.* Robinson, 1 Wright 210; Erie, &c., Plank Road Co. *v.* Brown, 1 Casey 156; 1 Parsons on Contracts 378; Homes *v.* Dana, 12 Mass. 190; Warren *v.* Stearns, 19 Pick. 73; Bryant *v.* Goodnow, 5 Id. 228.

[Shober *v.* Lancaster Co. Park Association.]

*B. F. Baer* (with whom was *S. H. Reynolds*), for defendants in error, cited 1 Parsons on Contracts 377–378; Chambers *v.* Calhoun, 6 Harris 13; Edinboro' Academy *v.* Robinson, 1 Wright 210; Morris's Appeal, antea, p. 16; Graham *v.* Graham, 9 Barr 254; s. c. 2 Jones 128; Commonwealth *v.* Penna. Canal Co., 16 P. F. Smith 41.

The opinion of the court was delivered, May 16th 1871, by

THOMPSON, C. J.—The judgment of the court below in this case is fully sustained in the Academy of Edinboro' *v.* Robinson, 1 Wright 210. The contracts in both were a positive promise to pay certain sums of money to accomplish a specified object, viz. : in the first to build an academy, and in the last to purchase grounds for an agricultural park. In both subscriptions the associators contemplated the procurement of charters of incorporation. In the former, the court held that the corporation, when organized, became the legal trustee of the funds subscribed, and the proper party to call on the subscribers for payment, if the subscriptions were not withdrawn before the act of incorporation and organization. "The duties created by the act of subscription are duties to the association, and the first of them to be performed is the duty of organization, and when it is complete the duty of paying the sum subscribed is a duty to the organized association," per Lowrie, C. J. It seems to me this is the *rationale* of the binding force of the subscription. Standing unrevoked, it involves the same principles as if the money had been paid at the moment of subscription. In that case, it would strike every one, that the corporators would be the proper parties to appropriate it to the objects intended by the association. The corporation would be the legal trustee to administer the fund. The Railroad Co. *v.* Echternacht, 9 Harris 220, was not in form and was held in substance to be different from the first-mentioned case. The subscription was a promise to take stock in the company when it was organized. This court held that that was but an expression of an intention to take the stock when the company was organized and was not enforceable by action. As we regard the case cited of the Academy *v.* Robinson, *supra*, in point, we regard it as ruling this case against the plaintiffs in error.

Judgment affirmed.