# Jeannette Bottle Works *v.* J. P. Schall, Appellant.

*Corporations—Subscription to stock—Contract.*

Where a paper sets out that the citizens of a borough are forming a manufacturing corporation, and that the signers to the paper " agree to subscribe " for the number of shares set opposite their respective names, and to pay for them, the paper constitutes a valid stock subscription.

*Corporations—Stock subscription—Right of corporation to maintain suit.*

When an agreement of subscription to stock declares the purpose to form a corporation under existing laws, each subscriber contracts with his associates, in consideration of similar contracts by them, to contribute to the common fund the amount subscribed by him, and these mutual promises form a valid and sufficient consideration, and the corporation, after its organization has been completed, may maintain an action to enforce the payment of these subscriptions to its capital stock.

*. Corporations—Stock subscription—Conditional subscription.*

The written agreement among the subscribers to stock of a proposed corporation intended to be organized under the Act of April 29, 1874, P. L. 73, is the creation of the associates, and may embrace any condition which does not involve a violation of law, or of the rights of future creditors, and by a condition thus appearing upon the face of the agreement all the associates and the corporation, when formed, are bound. A subscriber to such an agreement cannot escape liability to the corporation by showing that his subscription was subject to a parol condition without also showing that all the subscribers assented to the condition as to his particular subscription, or that all subscriptions were subject to the same parol condition.

In an action upon a written subscription to stock, the defendant will not be permitted to prove that he was induced to sign the contract upon certain conditions without which the contract would not have been signed, where his offer does not state the conditions, nor who made them, nor who had knowledge of them, nor that the conditions had been violated.

Argued April 18, 1899.   Appeal, No. 69, April T., 1899, by defendant, from judgment of C. P. Westmoreland Co., May T., 1895, No. 1020, on verdict for plaintiff.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.   Opinion by W. D. PORTER, J.

Assumpsit upon a stock subscription.    Before McCONNELL, J.

The facts are fully stated in the opinion of the court.

The trial court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $220.26. Defendant appealed.

*Errors assigned* were (1) in giving binding instructions for plaintiff. (2) Ruling on evidence as stated in the opinion of the court.

*W. A. Griffith,* with him *V. E. Williams* and *A. M. Sloan,* for appellant.—A contemporaneous parol agreement may be set up, permitted and supported with reference to stock subscriptions: Howard v. Turner, 155 Pa. 349; Hilliard v. Allegheny G. W. C. Co., 173 Pa. 1; Lair v. Westmoreland Specialty Co., 155 Pa. 33; Jessop v. Ivory, 158 Pa. 71; Spellier Electric Time Co. v. Leedom, 149 Pa. 185; Hanover Junction & S. R. R. v. Haldeman, 82 Pa. 36; Caley v. Phila. & Chester County R. R., 80 Pa. 363; Miller v. Hanover Junction R. R., 87 Pa. 95; Mc-Carty v. Selingsgrove R. R. Co., 87 Pa. 332.

A corporation under the corporation act of 1874, like the one in suit, does not have a legal existence until " the said original certificate . . . . shall then be recorded in the office for the recording of deeds, in the county where the chief operations are to be carried on, and from thenceforth the subscribers thereto, and their associates and successors, shall be a corporation for the purposes and upon the terms named in the said charter." This is a condition precedent to the right to begin business: Guckert v. Hacke, 159 Pa. 303; National Exchange Bank v. Crowell, 39 W. N. C. 228; Muncy Co. v. Green, 143 Pa. 269; Strasburg R. R. v. Echternacht, 21 Pa. 220; Phipps v. Jones, 20 Pa. 260; Edinboro Academy v. Robinson, 37 Pa. 210; Shober v. Lancaster Co. Park Assn., 68 Pa. 429; Boyd v. Peach Bottom R. R. Co., 90 Pa. 169.

A complete legal existence is necessary to the right of a corporation to enforce a subscription to its stock: Spellier Elec. Time Co. v. Leedom, 149 Pa. 185; Garrett v. Dillsburg R. R., 78 Pa. 465; Auburn Bolt Works v. Schultz, 143 Pa. 256; Hedge & Horn's App., 63 Pa. 273; Taylor on Private Corporations, sec. 110, p. 79.

*Paul H. Gaither,* with him *J. R. Spiegel, M. N. M'Geary* and *Cyrus E. Woods,* for appellee.—The decisions of the Su-

preme Court in the cases of Garrett v. D. & M. R. R., 78 Pa. 465, Auburn Bolt Works v. Shultz, 143 Pa. 256, and Muncy Traction & Engine Works v. De La Green, 143 Pa. 269, rule this case in plaintiff's behalf.

A subscriber cannot, when sued on his subscription for stock in a de facto corporation, deny its legal incorporation or allege that it has done acts forfeiting its franchises: Dyer & Co. v. Walker & Howard, 40 Pa. 157; Freeland v. Penna. Central Ins. Co., 94 Pa. 504.

OPINION BY W. D. PORTER, J., March 21, 1900:

This action was brought to recover the amount of a subscription for the stock of plaintiff company, made by defendant before the certificate of organization had been filed and charter issued. The subscription contract upon which this action is founded was as follows: "Whereas, the citizens of Jeannette are forming an association to be chartered under the laws of Pennsylvania as the Jeannette Bottle Works. . Said Bottle Works to be located in the borough of Jeannette, Pa. That the capital stock of said company is to be $25,000, and shall consist of 1,250 shares of $20 each:

"In pursuance of the above, we the undersigned citizens of Jeannette borough and vicinity agree to subscribe for the number of shares at the amount ($20.00) per share set opposite our respective names. And we further agree to pay for the shares so subscribed by us in the following manner, to wit, one-fifth of the amount so subscribed to be paid when the charter for said company is obtained, one-fifth in 30 days from date of charter, one-fifth in 90 days from date of charter, one-fifth in 5 months from date of charter, one-fifth in 7 months from date of charter." This paper was signed by about one hundred persons, including the defendant, who admits that he signed for ten shares, amounting to $200.

At the trial the plaintiff offered in evidence the above recited agreement, the certificate of organization in pursuance thereof, filed in the office of the secretary of the commonwealth, in accordance with the requirements of the act of April 29, 1874, and the several supplements thereto, on August 23, 1893, and on said day approved by the governor of the commonwealth, and recorded in Westmoreland county, on February 8, 1895,

and the letters patent bearing date August 23, 1893. Plaintiff called witnesses, who testified that, at a meeting of the stockholders of the corporation, on August 29, 1893, the letters patent and charter were read, and that defendant was present and took an active part in the proceedings. It was not denied that the calls for instalments upon the stock had been regularly made; nor that defendant had due notice; nor that his subscription remained unpaid. Upon this showing plaintiff rested.

The defendant then made this offer, viz: "Defendant proposes to prove by the witness, J. P. Schall (the defendant) and other witnesses, that the defendant here was induced to sign the contract in suit upon certain conditions without which the contract would not have been signed." This testimony was objected to as incompetent and irrelevant, and because it was not made part of the written instrument. The objection was sustained and defendant offered no further testimony. The court charged the jury "to find for plaintiff if they believed plaintiff's evidence."

We have here two assignments of error: "1. The learned court erred in ruling that the plaintiff had made out a prima facie case, and a good cause of action on the pleadings and evidence. 2. The learned court erred in refusing defendant's offer to prove, by defendant and other witnesses, that he was induced to sign the contract in suit, upon certain conditions, without which the contract would not have been signed." In support of the first assignment it is urged that the so-called subscription agreement is not a subscription, but merely an agreement to subscribe at some future time; and that, even if it was a subscription, it cannot sustain an action by the plaintiff, which was not at that time incorporated. The contention founded upon the words of the agreement cannot be sustained. It is true that we find in the instrument this clause: "We, the undersigned citizens of Jeannette borough and vicinity, agree to subscribe," but we must consider the whole paper in order to ascertain its meaning. The agreement first recites that the citizens of Jeannette are forming an association to be chartered under the laws of Pennsylvania as the Jeannette Bottle Works, states the amount of capital stock and number of shares; then comes the contract, beginning with these words, "In pursu-

ance of the above, we, the undersigned citizens of Jeannette Borough and vicinity, agree to subscribe," etc. This is an explicit declaration that the written agreement is made in pursuance of the plan, and for the purpose, of forming an association to be chartered under the laws of Pennsylvania, and that the written instrument with the subscriptions thereon is to be used to accomplish the desired result. The contract contains an absolute agreement to pay for the shares, so subscribed, at times definitely determined. This paper was an agreement among those who signed it to take and to pay for the shares of a proposed corporation, towards the formation of which the written instrument was the first step. Upon the faith of defendant's subscription, his associates have replied and the commonwealth has granted a charter; defendant was aware of these facts, and he cannot now avoid liability through a construction of his agreement which is contrary to its express terms.

The proposition that a corporation cannot, after its organization has been completed, maintain an action to enforce payment of subscriptions to its capital stock made before the incorporation, is unsound. The position of appellant upon this question is thought to be sustained by the decisions in Strasburg R. R. Co. v. Echternacht, 21 Pa. 220; Hedge and Horn's Appeal, 63 Pa. 273, and Boyd v. Peach Bottom R. R., 90 Pa. 169. In the case last named, it was held that the corporation could sustain an action upon such subscriptions, although the judgment was, upon other grounds, reversed. Hedge and Horn's Appeal was a proceeding in equity, upon an allegation of partnership, and the bill was dismissed without prejudice to the right at law of the company to sue for and recover upon the contract of subscription. In Strasburg R. R. Co. v. Echternacht, the subscriptions were made conditional upon the procuring of a charter by special legislative enactment, the special act passed at the next session of the legislature, and an organization was effected. The corporation filed a bill in equity to enforce the specific performance of the subscription agreement, the bill was dismissed by the court below, and this decree was affirmed. The decision was finally put upon the ground that, if the contract was enforceable, the remedy was at law. It is true that the opinion contains expressions which would deny the right of a corporation to recover upon any agreement of subscription not made

with the company and after charter obtained, but those expressions were disregarded in Edinboro Academy v. Robinson, 37 Pa. 210, and Steamship Company v. Murphy, 6 Phila. 224. In the case of Shober v. Lancaster Co. Park Assn., 68 Pa. 429, the facts were the same with those which had been considered in Strasburg R. R. Co. v. Echternacht, but the action was at law; the earlier case was distinguished and a judgment in favor of the company was sustained. This case has been followed by many, which it is not necessary to cite, clearly establishing the right of a corporation to maintain an action on a stock subscription under the circumstances of this case.

When an agreement of subscription to stock declares the purpose to form a corporation under existing laws, each subscriber contracts with his associates, in consideration of similar contracts by them, to contribute to the common fund the amount subscribed by him, and these mutual promises form a valid and sufficient consideration. This contract cannot be enforced by the individuals composing the association, for the duties are to the association, and the first duty is to organize the corporation. When the company contemplated by the subscription paper has been duly organized, it becomes the legal representative of all the subscribers to the stock, and invested with the power to enforce the contract. The entire scheme prior to the organization of the association is experimental and inchoate, and subscriptions to stock have the nature of mere proposals, and, during that period, may be withdrawn. The association cannot be said to be organized until all preliminaries have been gone through with and it is ready to apply for a charter. It has been held under our legislation that the organization of the corporation becomes complete when it is ready to file the proper certificate and application for a charter in the office of the secretary of the commonwealth. Upon the filing of the certificate, the obligation of the subscriber becomes final: Garrett v. Railroad Co., 78 Pa. 465; Muncy Co. v. Green, 143 Pa. 269; Auburn Bolt Works v. Shultz, 143 Pa. 256. In the present case, we have neither evidence nor offer of evidence that the defendant withdrew his subscription. Upon the evidence of the subscription, charter and certificates of the record thereof, and the testimony as to the participation of the defendant in a stockholders' meeting at which the charter and letters patent were read, the

conclusion of the court that the plaintiff had made out a prima facie case was fully warranted. The first specification of error is dismissed.

Defendant's offer of evidence, the rejection of which is the subject of the second assignment of error, was exceedingly vague and indefinite. It was simply an offer to prove that the defendant was induced to sign the contract in suit upon certain conditions, without which the contract would not have been signed. The offer did not state the conditions, nor who made them, nor who had knowledge of them, nor was it proposed to prove that the conditions had been violated. The defendant was not injured by the ruling, unless the effect of the evidence was to vary the terms of the written instrument already in evidence. The complaint of the defendant, therefore, is that he was not permitted to strike down his written agreement by introducing evidence of a parol condition. The competency of evidence tending to establish a parol condition, varying the terms of a written agreement of subscription to stock of a corporation, is dependent upon circumstances. If the association is incorporated at the time of the subscription, it may sell its stock upon any condition not forbidden by law, and, as between the corporation and the subscriber, the condition will hold good : Railroad Co. v. Stewart, 41 Pa. 54; Railroad Co. v. Hickman, 28 Pa. 318; Railroad Co. v. Haldeman, 82 Pa., 36; Caley v. Railroad Co., 80 Pa. 363. In the present case, the subscription was made before the incorporation of the association, and a different rule must be applied. It cannot be said that the rule is to be applied here which has been enforced as to subscriptions to stock of railroad companies, prior to incorporation, under the general law of 1849, where the commissioners acted in a public capacity with powers strictly limited by law, and it was held that any parol condition attached to the subscriptions was void, while the subscription was valid : Railroad Co. v. Biggar, 34 Pa. 455; Railroad Co. v. Bowser, 48 Pa. 29. The written agreement among the subscribers to stock of a proposed corporation, intended to be organized under the Act of April 29, 1874, P. L. 73, is the creation of the associates, and may embrace any condition which does not involve a violation of law or of the rights of future creditors, and by a condition thus appearing upon the face of the agreement, all the associates and the cor-

poration, when formed, are bound. A subscription to stock under such a contract is not only an undertaking for the use of the proposed corporation, but with all other subscribers, and each subscriber has the unquestionable right to demand that the contract shall be enforced according to its expressed provisions. The agreement bears upon its face notice of the limitations upon the power of those who solicit subscriptions to make conditions; and the parol contracts of such solicitors, not within the scope of their authority, are not binding upon the subscribers who are not parties thereto: The Nippenose Manufacturing Co. v. Stadon, 68 Pa. 256; Graff v. Railroad Co., 31 Pa. 489. When the subscription is absolute, the subscriber cannot be permitted to set up a secret parol arrangement, perhaps with same unauthorized agent, by which he may be released from his subscription while his fellow subscribers continue to be bound: Miller v. Railroad Co., 87 Pa. 95; McCarty v. Railroad Co., 87 Pa. 332. When a party has signed an unconditional subscription agreement in which many other persons join, he cannot escape liability to the corporation by showing that his subscription was subject to a parol condition, without also showing that all the subscribers assented to the condition, as to his particular subscription, or that all subscriptions were subject to the same parol condition. The appellant did not propose to prove anything of this nature. Assume the offer as an established fact, and it simply amounts to this: the subscription of the appellant was subject to a parol condition, of which his associates had no knowledge. The objection to the evidence was properly sustained.

Judgment affirmed.