# Altoona Sanitary Milk Company *v.* Armstrong, Appellant.

*Corporations—Foreign, corporations—Registration and appointment of agent—Contract—Subscription contract.*

1. Where a number of persons enter into a contract in writing with a foreign corporation, not registered in Pennsylvania, by which they agree to organize a Pennsylvania corporation, to subscribe to the stock thereof, and to pay out of the money thus subscribed for a plant to be erected by the foreign corporation for the new company, and in pursuance of this agreement the Pennsylvania company is organized, a large portion of the subscriptions are paid, the plant is erected and the foreign corporation paid in full, certain subscribers who had not paid, cannot in an action against them by the Pennsylvania company set up that the whole of the contract is invalid because it was made with a foreign corporation which was not registered at the time in Pennsylvania.

2. A subscription to a joint-stock company is not only an undertaking to the company, but with all other subscribers. Such contracts are trilateral, and even if fraudulent as between two of the parties, they are to be enforced for the benefit of the third.

Argued Oct. 26, 1908. Appeal, No. 9, Oct. T., 1908, by defendant, from judgment of C. P. Blair Co., June T., 1905, No. 134, on verdict for plaintiff in case of Altoona Sanitary Milk Company v. T. J. Armstrong. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover a stock subscription.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $603.83. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Thomas C. Hare,* with him *Edwin M. Amies,* for appellant.— The contract was an undertaking on the part of the construction company for doing the unlawful things provided for in the contract. It is clear that an action against the subscribers

to the contract cannot be sustained without disclosing the entire contract; for performance of its prohibited acts (the acts of the unregistered corporation), is the foundation of recovery against the defendant: Pittsburg Construction Co. v. West Side Belt Railroad Co., 151 Fed. Repr. 125; McMullen v. Hoffman, 174 U. S. 639 (19 Sup. Ct. Repr. 839); Diamond Glue Co. v. Glue Co., 187 U. S. 611 (23 Sup. Ct. Repr. 206); Mitchell v. Smith, 1 Binney, 110; Badgley v. Beale, 3 Watts, 263; Columbia Bank & Bridge Co. v. Haldeman, 7 W. & S. 233; Shuman v. Shuman, 27 Pa. 90; Kepner v. Keefer, 6 Watts, 231; Seidenbender v. Charles, 4 S. & R. 151; Eberman v. Reitzel, 1 W. & S. 181; Lloyd v. Leisenring, 7 Watts, 294; Chase v. Burkholder, 18 Pa. 48; Turnpike Co. v. Henderson, 8 S. & R. 219; Holt v. Green, 73 Pa. 198; Ice Mfg. Co. v. Armour, 12 Pa. Superior Ct. 443.

As will appear from the following authority, precisely the same rule obtains in federal courts, as is found in the Pennsylvania courts: Connolly v. Pipe Co., 184 U. S. 540 (22 Sup. Ct. Repr. 431); Trist v. Child, 88 U. S. 441; Bank v. Owens, 27 U. S. 527; McMullen v. Hoffman, 174 U. S. 639 (19 Sup. Ct. Repr. 839); Gibbs v. Consolidated Gas Co., 130 U. S. 396 (9 Sup. Ct. Repr. 553); Harris v. Runnels, 53 U. S. 79.

Cases expressly decided under the act of 1874 forbidding the right of recovery to foreign corporations not complying with its requirements are Ice Mfg. Company v. Armour, 12 Pa. Superior Ct. 443; Lasher v. Stimson, 145 Pa. 30; Silk Mfg. Company v. Reilly, 187 Pa. 526; Delaware River Quarry, etc., Co. v. Railway Co., 204 Pa. 22.

*H. A. Davis,* for appellee.—It is well settled that subscriptions to the stock of a corporation are trilateral contracts. They are undertakings not only with the company and the commonwealth, but with all the other subscribers to the stock: Braddock Elec. Railway Co. v. Bily, 11 Pa. Superior Ct. 144; Graff v. Railroad Co., 31 Pa. 489; Phila. & Del. County R. R. Co. v. Conway, 177 Pa. 364; Jeanette Bottle Works v. Schall, 13 Pa. Superior Ct. 96; Shober v. Lancaster County Park Assn., 68 Pa. 429.

OPINION BY PORTER, J., February 26, 1909:

This action is brought to recover the amount of a subscription by the defendant to the capital stock of the plaintiff corporation. The only ground of defense, so far as the specifications of error are concerned, was that the defendant was relieved of liability because of the connection of the Industrial Construction Company, of Chicago, a corporation of the state of Illinois, with the contract which included the subscription of the defendant to the capital stock of the plaintiff corporation. The fact that the Illinois corporation, at the time of the execution of the contract, did not have an authorized agent or an established office in Pennsylvania, and had not registered in the office of the secretary of the commonwealth, or in the office of the auditor general, and consequently had no right to make the contract, must, it is contended by the defendant, render the whole contract invalid, and strike down all rights arising thereunder. The contract was dated October 15, 1903, and the Illinois corporation, while not registered at that date, did appoint an agent, establish an office, execute the certificate required by the Act of April 22, 1874, P. L. 108, and duly file the same in the office of the secretary of the commonwealth, on November 11, 1903.

The written agreement which contains the subscription of stock upon which this action is founded did name the Illinois corporation as "party of the first part" and the subscribers, the defendant and eighty-two other residents of Altoona, as "parties of the second part;" but all the provisions of this paper must be considered in determining its true meaning and ascertaining its effect and the rights and duties to which it gave rise. When thus considered it clearly appears that the principal purpose of the subscribers was to form a corporation to own and operate a sanitary milk plant, the stock of the corporation to be held by the subscribers in the proportion set down in their respective subscriptions. This clearly appears from the following paragraph of the subscription agreement. "For the purpose of forming a corporation to own and operate said sanitary milk plant and fully carry out the intention of the subscribers, it is agreed that when this contract is closed, second parties shall come together at some convenient meeting place in compliance

with five days' notice . . . . and at the time and place specified in said notice, proceed to organize, elect the executive committee herein provided for, adopt a name, elect a board of directors and take such other action as may be necessary preparatory to incorporation. And it is agreed that at this meeting each subscriber may cast one vote either in person or by proxy for each one hundred dollars subscribed by him or her and that a majority of the votes then and there cast shall elect as the will of all and that after the incorporation each subscriber shall receive the number of shares of the stock of the corporation as shall represent his or her paid up subscription thereto." The agreement contained a stipulation that the subscriptions were not to become binding unless the sum of $50,000 or more was subscribed. The agreement also contained a provision that the subscribers should select and at their own expense furnish suitable and reasonably level land for said plant, with good title, within twenty days from the completion of subscriptions. The agreement did embody a contract with the Illinois corporation under the provisions of which the latter was required to erect, upon the site selected and furnished by the subscribers, a building of a kind specified, and furnish the same with a large amount of specified machinery to be used in the process of treating the milk, for which it was to be paid the sum of $42,000. The agreement provided that all subscriptions were to be the property of the Illinois corporation until the full contract price had been paid, "but all such subscriptions, money or notes remaining after the first party (the Illinois corporation) has been fully paid are the property of the second parties (the subscribers)." Those who signed this paper subscribed for the purpose of forming a corporation, the stock in which was the only thing they were to receive as the consideration for the money they agreed to pay. The purpose for which the organization was to be formed was clearly stated and the manner in which it was to be organized was expressly provided for. The erection of the plant, which the corporation was to own and operate, was one incident involved in carrying into execution the general purpose. The subscribers selected the Illinois corporation as the contractor to erect the building and pledged, or attempted to pledge, the

subscriptions to the stock of the proposed Pennsylvania corporation as security for the payment of the contract price of the building. If it be assumed that this pledge of the subscriptions was valid, then the incorporators simply burdened the Pennsylvania corporation, when formed, with responsibility for the payment of the price of the building. That is a matter, however, which it is not necessary to discuss for it is an admitted fact that the Illinois corporation has been paid in full.

The Illinois corporation was not a subscriber to the stock of the Pennsylvania corporation; its undertaking was simply to equip and furnish the building. The agreement was, in effect, quadrilateral, each subscriber contracted with the proposed Pennsylvania corporation, with all the other subscribers and with the Illinois corporation: Railway Company v. Bily, 11 Pa. Superior Ct. 144; Jeannette Bottle Works v. Schall, 13 Pa. Superior Ct. 96; Edinboro Academy v. Robinson, 37 Pa. 210; Shober's Administrators v. Lancaster County Park Association, 68 Pa. 429.

There was no dispute, at the trial in the court below, as to the material facts in this case. Subscriptions to the capital stock of the proposed corporation to an amount in excess of $50,000, the aggregate being almost $75,000, were obtained prior to October 15, 1903. Notice was given to the subscribers as provided for in the agreement, and in pursuance thereof there was a meeting of the subscribers on October 19, 1903, at which an organization was effected, there were elected a board of directors, a secretary, a treasurer and three auditors; the name of "Altoona Sanitary Milk Company" was adopted for the proposed corporation, the amount of the capital stock fixed at $75,000, the board of directors authorized to determine the manner of collecting the stock subscriptions and provision made for procuring a charter. An application for a charter in due form having been made, the same was approved by the governor of the commonwealth and the charter was issued on December 8, 1903, to the plaintiff corporation. The charter was duly recorded in the office for the recording of deeds in Blair county, on January 22, 1904. The Pennsylvania corporation thus formed issued calls for payment of installments upon the subscriptions of stock from

time to time, of which this defendant had notice. The Illinois corporation proceeded to do the work which it had covenanted to perform and the Pennsylvania corporation made payments upon the same from time to time. The Illinois corporation completely performed the work which it had undertaken to do and after having done so was, on August 12, 1904, paid the full balance for the completion of the work. The Illinois corporation thereupon ceased to have any interest in this agreement or in the Pennsylvania corporation. The Pennsylvania corporation, in addition to the $42,000 which it has paid to the Illinois corporation, paid $9,000 for the land on which the building was erected, $6,000 for horses, wagons and milk routes, $5,000 for the erection of a stable and over $4,000 for the purchase of a creamery. All these expenditures were made either in preparation for or in connection with the operation of the plant. Other parties who joined in the subscription agreement have paid in upon their subscriptions, to the Pennsylvania corporation, over $61,000, but the defendant and a few others decline to pay. After this action was brought, in August, 1905, the defendant for the first time raised the question that the whole subscription agreement was invalid, for the reason that the Illinois corporation which had contracted for the erection of the building had not registered in Pennsylvania in accordance with the provisions of the Act of April 22, 1874, P. L. 108. The defendant first raised this objection long after the Pennsylvania corporation had paid to the Illinois corporation the entire consideration for the erection of the building, and after the latter corporation had ceased to have any interest in the agreement.

After careful consideration of the subscription agreement and the evidence produced at the trial below we are led to the conclusion that the action of the learned judge of the court below in giving binding instructions for the plaintiff was free from error. The contract, so far as the Illinois corporation is concerned, has been fully executed, and that corporation has no further interest in the matter. The plaintiff does not recover under any right derived from the Illinois corporation, but upon the contract of this defendant with his associates. Even if the Illinois corporation could not have enforced this contract against

the defendant and his associates, the defendant cannot allege that invalidity in this action to recover his subscription to the stock of the Pennsylvania corporation. "A subscription to a joint stock is not only an undertaking to the company, but with all other subscribers. Such contracts are trilateral, and even if fraudulent as between two of the parties, they are to be enforced for the benefit of the third:" Graff v. Railroad Company, 31 Pa. 489; Philadelphia & Delaware County Railroad Company v. Conway, 177 Pa. 364.

The judgment is affirmed