## The Bedford Railroad Company *versus* Bowser.

*Validity of conditional subscription to railroad stock.— Change in charter, effect of, on subscription.— Stockholder bound after participating in election.— Power of directors of corporation to cancel subscriptions. — Minutes of corporation.— Admissibility of, in action against corporator.*

1. Conditions attached to subscriptions to stock of a railroad company by the commissioners appointed to receive them, preparatory to the procurement of a charter, are not binding.

2. Where, after subscribing for stock under an Act of Assembly which required subscriptions to a certain amount before corporate authority should be granted, a subsequent act was passed reducing the amount of subscrip-

[Bedford Railroad Co. *v.* Bowser.]

tions required, under which the company was organized, it was held the change would not release from liability the person subscribing, who had also voted at the organization, and for the election of directors, in right of his subscription; and in an action by the company against such stockholder for the sum subscribed, that it was error to instruct the jury that the defendant was relieved by the change if he did not know of it, and referring the question of his knowledge to them.

3. The directors of a corporation are its agents with limited powers, and their duties are to conduct its affairs in furtherance of the ends of its creation: they have no power to destroy it or give away its funds, or deprive it of any of the means to accomplish the purposes for which it was chartered.

4. Hence, where a board of directors of a railroad company, after reciting a condition attached to certain subscriptions by the commissioners, resolved that the condition be adopted as the act of the company; that the stock of each subscriber be purchased by the company, and the payment of the subscription assumed; that the stock be surrendered, subscription annulled and cancelled by the secretary: such action on the part of the board was irregular and unauthorized, and the cancellation of the subscription in accordance therewith invalid; and it was error on the part of the court to instruct the jury that if the company had assets sufficient to pay their debts the cancellation was valid, and released the subscribers, of whom the defendant was one.

5. The minutes of the company showing that immediately after the election of the new board of directors, they repealed the resolutions of their predecessors, were admissible in evidence against the defendant as a corporator; the books of the company were evidence against him, unless his relationship to it had terminated, which it was not for the court to decide; and it was also competent for the company to prove what took place when the first resolutions were adopted, as showing that the action of the board was fraudulent and unauthorized.

ERROR to the Common Pleas of *Bedford county.*

This was an action of *assumpsit* by The Bedford Railroad Company against Jonathan Bowser, to recover the amount due on his subscription for three shares of stock of the company, at $50 a share.

The subscription was made June 12th 1858, and this fact was not denied on the trial; but the defendant, under the pleas of payment, release, illegality of consideration, &c., gave notice that he would offer in evidence the following special matters as a defence:—

1. That by the terms of the original charter to the plaintiffs, passed March 19th 1858, it was required that the sum of $150,000 should be subscribed in good faith before letters patent should be issued to the plaintiffs. That all or nearly all of the stock, including that of the defendant, was subscribed upon that, as well as upon other conditions. That in 1859, a supplement to the original charter was obtained or procured from the legislature, authorizing the issuing of letters patent when $25,000 of stock should have been subscribed.

2. That the subscriptions, including defendant's, were conditional, but certified to the governor, in order to obtain letters patent, as unconditional. Two of these conditions were, that

$75,000 should be subscribed in good faith by non-residents of the county, before the defendant and others should be required to pay their subscriptions; and also that when paid, the money should be applied to the construction of the road on the end next to Bedford.

3. That two subscriptions to stock were made, one by J. K. Moorhead, and one by William P. Schell, agent, amounting to $75,000, to comply with the aforesaid conditions. That the said subscriptions were made without authority, and not in good faith. That they were afterwards, in part, released and in part transferred, but were really never paid by those to whom the stock was transferred, nor by the subscribers.

4. That the certificates of stock to the governor to obtain letters patent were not properly authenticated.

5. That said certificate of stock contained a subscription of William B. Schell & Co. for $75,000 worth of stock, when in truth and in fact no such subscription had ever been made.

6. That by gross mismanagement of the affairs of said company, $10,000, or a large sum of money, was paid to Collins, Dull & Co., over and above other bids for the contract of the work. That a gratuity of $6000 was afterwards paid said Collins, Dull & Co., over and above the contract price of their work, by the company, whose directors at the time were elected by fraud and collusion, for the accomplishment of this purpose.

7. That the subscription of the defendant was cancelled and annulled by an order of the board of directors, and the defendant released.

Issues having been formed on these pleas, a jury was called on 4th of May 1863. The material facts were as follows:

The Bedford Railroad Company was incorporated by an Act of the General Assembly of Pennsylvania, passed March 19th 1858, with a capital of five thousand shares, of $50 each, and with the right to increase the same, from time to time, by a vote of the stockholders, to an amount sufficient to carry out the object of the charter; and the governor was authorized to issue letters patent, whenever it was duly certified to him that three thousand shares had been subscribed. A supplement was passed January 20th 1859, which authorized the issuing of letters patent when 10 per cent. of the capital stock should be subscribed, in conformity with the second section of the general law regulating railroad companies.

Books to receive subscriptions to the capital stock were opened by the commissioners named in the act, in the spring and summer of 1858, on the first leaf of which was written the following:—

"It is hereby agreed by the undersigned, commissioners named in the Act of Assembly incorporating the Bedford Railroad Company, that all subscriptions to said railroad, made in this

book, shall be payable on the following conditions, viz.: The first instalment shall not be required by the board of directors of said company until after the first day of October next, nor until at least $75,000 shall be obtained outside the county of Bedford, and the same shall have been approved by the board of directors of said company.

" Witness our hands and seals, this 7th day of May 1858."

Signed and sealed by nine commissioners.

The caption to the subscriptions was in the following words :—

" We, whose names are hereto subscribed, do promise to pay to the treasurer of the Bedford Railroad Company the sum of $50 per share, for each and every share of stock set opposite our respective names, in twelve monthly instalments. Witness our hands."

Subscriptions to the amount of $100,000 were obtained, and amongst the subscribers of stock, residing in the county of Bedford, was the defendant.

Letters patent were issued by the governor to the company on the 3d of February 1859, and the company was duly organized by the election of a president and directors, on the 19th of February 1859, of which public notice was given, as reauired by law.

The defendant took part in this election, and voted for the officers.

On the trial, the plaintiffs, having given in evidence under exception the subscription of defendant, over which was written, " cancelled by order of the board of directors," offered to prove that at a meeting of the directors of the company, held on the 11th of January 1861, three days before the expiration of their term of office, Mr. Cessna, who represented himself as the attorney of the stockholders, appeared and handed to the board a set of resolutions to cancel and annul the stock, and stated that the object of the resolutions was to defeat the claims of Collins, Dull & Co. (who were contractors on the road), and that the resolutions were passed by the board.

This was objected to by defendant—

1. Because the conversations and allegations of persons about the board, when the purpose of annulling was under consideration, are not evidence in the case.

2. It is of no importance to the case what motives led the directors to the act of cancellation. The record itself is the evidence, and the only evidence, the company can offer.

3. Parol evidence. is inadmissible to alter, vary, or contradict the record ; and

4. The declarations of Mr. Cessna are not evidence in this case to affect the defendant, for whom he did not appear.

The court rejected the evidence, unless it were made to appear

[Bedford Railroad Co. v. Bowser.]

that Mr. Cessna was attorney for Mr. Bowser at the time the resolutions were offered.

After some further evidence, the plaintiff offered the minutes of the board meetings held March 23d and 25th 1861, at one of which the directors were elected, and at the other the resolutions· of January 11th 1861 were rescinded and declared null and void; which were objected to and rejected by the court.

Among the points presented by the plaintiff were the following :—

3. If the jury believe that debts had been contracted in the honest prosecution of the enterprise for which the corporation was created, and that some of the stockholders had paid the amount of their subscription to the capital stock of the company, then the directors had no power or authority to cancel subscriptions of stock, on which no payments had been made, and thus leaving the creditors without the means of collecting their claims, and render valueless the stock of the paying subscribers.

4. That if the jury believe the object of the cancellation of the stock was to defeat Dull, Collins & Co., and other creditors in the collection of their claims against the company, such a cancellation was a fraud on the creditors, and therefore null and void.

5. That the defendant cannot set up the cancellation of the stock subscribed by him, under the facts and circumstances of this case, as a defence, and that the unauthorized acts of the directors in making such cancellation, leave the case in the same situation as if such cancellation had never taken place.

6. The fact that defendant voted at an election for directors, after the supplement to the charter was passed, prohibits him from setting up any defence on the ground that $150,000 were not subscribed before the issuing of the letters patent.

Which were answered as follows :—

" 3. We answer this point by instructing you, that, notwithstanding some of the stockholders of said corporation had paid the amount of their subscriptions to the capital stock of said company, the directors had authority to cancel subscriptions of stock on which no payments were made ; and if the corporation has assets enough to pay their creditors left, their cancellation of stock would be valid.

" 4. If the jury believe the object of the cancellation of the stock was to defeat Dull, Collins & Co., and other creditors in the collection of their debts, such cancellation was a fraud on such creditors, and would render the action of the board null and void; but we are of opinion that the creditors of said company would have a right to complain. If, however, the assets of said corporation were sufficient to pay the debts, and you are satisfied from the evidence in the case that the debts were paid,

12 Wr.—3

the cancellation cannot be taken advantage of by the directors of said company in this suit.

"5. We answer this by saying to you that the defendant can set up the cancellation of the stock subscribed by him, under the facts and circumstances of this case, as a defence, and that he is discharged by such cancellation, unless said company proves that he has agreed to pay his subscription since the cancellation. There is no evidence before the court, that we know of, that he, the defendant, agreed or promised to pay his subscription since said cancellation; this being the case, your verdict should be for the defendant.

"6. We answer by instructing you that the fact that Bowser, the defendant, voted on the 19th day of February 1856, at an election held for the election of directors of said corporation, one day less than one month after the change of the charter, does not prohibit him from setting up this defence, unless he knew of the modification of the charter from \$150,000 to \$25,000. The presumption of law, under the facts, would be that he knew of the existence of the change of the charter—whether he did or not we submit to you, under the testimony in the case, and you will decide accordingly."

Under these instructions there was a verdict and judgment for defendant. Whereupon the plaintiff sued out this writ, and assigned for error—

1. The rejection of the plaintiff's offer as to what took place at the meeting of the board which was held January 11th 1861.

2. The rejection of the minutes of the meetings held March 23d and 25th 1861.

3. The refusal of the court to answer the plaintiff's 3d point in the affirmative.

4, 5, 6, and 7. The answers given by the court below to the plaintiff's 3d, 4th, 5th, and 6th points.

*A. King*, for plaintiffs in error.

*John Cessna*, for defendant in error.

The opinion of the court was delivered, June 22d 1864, by

STRONG, J.—The subscription originally made by the defendant to the capital stock of the company was, in legal effect, absolute and unqualified. It has repeatedly been decided that conditions attached to subscriptions to stock, made preparatory to the procurement of a charter, are entirely nugatory, and are to be treated as if they had no existence. The commissioners appointed to receive them are agents with limited powers, incapable of offering any other terms to a subscriber than those prescribed by the legislature. The Act of Assembly that authorized the

issue of letters patent to these plaintiffs required that subscriptions to the amount of $150,000 should be made to the capital stock, before corporate authority should be granted. This requirement was in force when the defendant's subscription was made. He subscribed on the 12th of June 1858, before the letters patent were issued. But on the 20th of January, A. D. 1859, a supplementary Act of Assembly was passed reducing the sum of subscriptions required to $25,000. After this the company was organized, and the defendant voted in right of his subscription, at the organization, and at the election of directors. Upon this state of facts the court instructed the jury, that unless the defendant knew when he voted that the required subscriptions to the capital stock had been reduced by law from $150,000 to $25,000, the change released him from his subscription—that the presumption of the law would be that he knew of the change in the charter; but that whether he did or not, the jury should determine. In this we think there was error. By voting, the defendant admitted himself still a corporator, and the general principle of the law is, that a corporator must be held cognisant of the terms of his own charter. There was no evidence to rebut this legal presumption, even if it was capable of rebuttal, and this part of the case was therefore put to the jury, upon an issue of fact which there was nothing to raise. The change in the charter could not relieve the defendant. After it was made he had contributed to involve his co-corporators in the venture, encouraged the creation of debts, and it was no longer for him to deny his liability to pay his own subscription: McConahy v. The Turnpike Company, 16 S. & R. 142.

But the more important questions in this record relate to the charge of the court respecting what was alleged to have been a release of the defendant from his liability as a subscriber, and to the rejection of testimony offered to explain an apparent cancellation of his subscription. Across the paper upon which the subscription was made, the following words were written: "Cancelled by order of the Board of Directors." To do away with the effect of this, and to show that it was unauthorized, the plaintiffs gave in evidence the minutes of a meeting of the board of directors, held on the 11th of January 1861, three days before the annual election of directors for that year, from which it appears that the board then adopted a series of resolutions of a most extraordinary character. After reciting that two hundred and sixty-six persons named, of whom the defendant is one, had subscribed to the capital stock on the books of the commissioners appointed to procure subscriptions preparatory to the organization of the company; that the subscriptions were made on condition that the first instalment should not be required before October 1st 1858, nor until at least $75,000 of stock should be

[Bedford Railroad Co. *v.* Bowser.]

obtained outside of the county of Bedford, and approved by the board of directors; and after reciting also that the board was satisfied, the understanding on the part of those subscribers was that the subscriptions should not be recoverable until at least $75,000 of stock should be obtained outside of the county of Bedford, and that such subscriptions should be appropriated to the construction of that part of the Bedford Railroad west of Bloody Run, and that the company had not been able to obtain the said stock subscription outside of the county, and that good faith required that the subscribers should be released, they went on to resolve: 1st, That the conditions allowed by the commissioners be ratified and adopted as the act of the company; 2dly, That the company purchases from each of the said subscribers their shares of the stock, and assumes the payment of their subscriptions; 3dly, That the said stock be and the same is hereby surrendered to the company; 4thly, That the said subscriptions are declared null and void and released; and 5thly, That the secretary of the company be required to cancel them.

We do not stop here to comment upon this most remarkable action, upon the inconsistency of the resolutions, or upon the inability of the directors to surrender the stock which was not their own, or to purchase without consulting the holders. The general purpose is plain. It was to discharge the subscribers named from liability to the company.

Having given these resolutions in evidence, the plaintiffs proposed to follow them by proof of the avowed motive for which they were offered and adopted; that they were presented to the directors at their meeting on the 11th of January 1861 by a person who claimed to be acting for the stockholders, and that he stated their object was to defeat the claim of Collins, Dull & Co., who were creditors. The court refused to permit the evidence to be given.

The plaintiffs next offered in evidence the minutes of the company, showing that immediately after the election of the new board of directors in January 1861, they repealed the resolutions which their predecessors had adopted. This evidence was also rejected. We think it should have been admitted. The books of the company were evidence against the defendant. He had admitted himself to be a corporator, and if he had not there was evidence that such was his position. The question was whether his relationship to the company had terminated. It was not for the court to decide that it had, and for that reason to rule that the books of the company were not evidence against him. And not only was the instrument of proof legitimate, but the subject-matter was proper for consideration. It was simply undoing what the former directors had unlawfully done, as we shall presently see, and undoing it before the defendant had acted in any way upon it.

[Bedford Railroad Co. v. Bowser.]

So, too, the proof of what took place, when the resolutions were presented and adopted, should have been received. It tended directly to show that the action of the board was fraudulent and unauthorized, that its purpose was not that which was avowed in the preamble to the resolutions. It is no objection to it that a party shall not be heard to set up his own fraud. The question here between these parties is the power of the men who adopted the resolutions to bind the company by them.

The chief error, however, in this record, and the one which was most fatal to the plaintiffs' case, was the instruction given by the court to the jury, that if the company had assets sufficient to pay their debts, the cancellation of the stock of these two hundred and sixty-six subscribers on the 11th of January 1861, was valid and released the defendant. From this we entirely dissent. The directors of the company then in office were its agents with limited powers, the extent of which the defendant was bound to know. Their duties were to conduct its affairs to the furtherance of the ends for which the company was created. They had no power to destroy it, to give away its funds, or to deprive it of any of its means to accomplish the full purpose for which it was chartered. The creditors were not the only persons who had interests and rights at stake. The stockholders who had paid their subscriptions, or bought their stock, and the Commonwealth, by whom the charter had been granted, were at least equally interested. The railroad was unfinished, and the Commonwealth had a right to demand that all the resources, rights, and credits of the company should be devoted to its completion. An unfinished road was useless to the remaining stockholders, and it was a wrong to them to render their stock valueless, by extinguishing that which was necessary, and which should have been applied to the object for which the legislature gave the company its being. Directors of a railroad company are trustees for all the stockholders, and, in a very just sense, for the Commonwealth. It is an abuse of their trust, wholly unauthorized, and at war with the design of the charter, to single out some of the stock subscribers and release them from their liability. No such authority in them has ever been recognised. It certainly was not in Lauman v. The Lebanon Valley Railroad Company, 6 Casey 42, nor in any of the cases cited by the defendant in error. It is neither supported by authority or reason.

The instruction given to the jury was therefore entirely erroneous. They should have been directed that the attempted cancellation of the defendant's subscription was without any effect, and that it did not release him from his liability.

It is unnecessary to notice the assignments of error more in detail. From what has been said, it will appear that, in our opinion, they are all sustained.

The judgment is reversed, and a *venire de novo* awarded.