Philadelphia & Delaware County Railroad Company *v.*
Thomas Conway, Appellant.

[Marked to be reported.]

*Railroads—Corporations—Stock subscription—Parol agreement—Evidence.*

A person who subscribes to the stock of a corporation cannot successfully defend against a suit on the subscription by averring that a parol agreement made at the time of the subscription was violated by the company, where the parol agreement is supported only by his own testimony, and is contradicted by the written agreement of subscription and by the testimony of the agent of the company.

*Corporations—Stock subscription—Principal and agent.*

Upon a written contract of subscription to the stock of a corporation, it is not competent to defeat the written contract by setting up an agreement made in parol with the agent who procures the subscription.

*Corporations—Stock subscriptions—Contracts with corporations and other subscribers.*

A subscription to the stock of a corporation is not only an undertaking with the corporation, but with all other subscribers.

Argued April 9, 1896. Appeal, No. 139, Jan. T., 1896, by defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1894, No. 73, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Assumpsit on a stock subscription. Before FINLETTER, P. J.
The action was based upon the defendant's subscription to the following instrument in writing :

" PHILADELPHIA, October, 1892.
" We, the undersigned, do hereby agree to subscribe the sums set opposite our respective names of the capital stock of the Philadelphia and Delaware County Railroad, for the purpose of aiding in grading and completing the said railroad to the crossing of the Leopard Road, at or near Newtown Square, the said subscriptions to become binding when $100,000 have been subscribed by others than the Pennsylvania Railroad Company.
" 2. Provided, The Pennsylvania Railroad Company will take capital stock for their present investment in the property amount-

ing to $250,000; and provided further, That the Pennsylvania Railroad Company will supply the balance of money required to complete the road as above, and take such obligations of the company as the president of the Pennsylvania Railroad Company may determine, it being understood that the Pennsylvania Railroad Company will not undertake to supply said funds to complete the railroad unless the parties in interest other than the Pennsylvania Railroad Company will secure the right of way free of cost to the company.

"3. Provided, The Pennsylvania Railroad Company will agree to complete the said railroad between Fernwood and the crossing of the Leopard Road near Newtown Square on or before the first day of July, 1894.

" 4. Payments to be made in installments, to be called for by the company as the work proceeds, but not oftener than once a month, or for more than twenty per cent. at any one time."

The facts of the case appear by the opinion of the Supreme Court.

The jury were instructed to return a verdict for the plaintiff for $1,775.17, and to answer this question:

" Was the statement made to the defendant that a station should be placed upon his, or the adjoining property ? "

The jury answered the question, " Yes."

Verdict and judgment for plaintiff for $1,775.17.   Defendant appealed.

*Error assigned* was in entering judgment for plaintiff.

*V. Gilpin Robinson,* for appellant.—The evidence showed that the terms of the subscription as to securing the right of way free of cost to the plaintiff company were not carried out: Caley v. Phila. & Chester County R. R., 80 Pa. 368; Plank Road Co. v. Arndt, 31 Pa. 319; Indiana & Ebensburg Turnpike Co. v. Phillips, 2 P. & W. 196.

The evidence shows and the special finding of the jury establishes that the subscription of the defendant was made upon the agreement that a station should be established upon the adjoining property, which agreement was not carried out: Caley v. P. & Chester R. R., 80 Pa. 370.

The representations of the agent at the time of the procuring of the subscription are evidence as bearing upon the terms and conditions of the contract of subscription: Rinesmith v. People's Freight Ry., 90 Pa. 262; Bucher v. D. & M. R. R., 76 Pa. 311; Pittsburg & Connellsville R. R. v. Stewart, 41 Pa. 55.

*John Hampton Barnes*, with him *George Tucker Bispham*, for appellee.—The term "subscription" implies a writing, and cannot be proved by parol until the absence of the subscription paper has been accounted for; nor can any parol agreement or condition made before or contemporaneous with the subscription be set up to vary its terms: Cook on Stock and Stockholders, sec. 137; Miller v. H. J. & S. R. R., 87 Pa. 95; McClure v. P. F. Ry., 90 Pa. 269; Guarantee Co. v. Mayer, 141 Pa. 511; E. I. & C. S. R. R. v. Posey, 12 Ind. 363; Eakright v. L. & N. J. R. R., 13 Ind. 404; Ellison v. M. & O. R. R., 36 Miss. 572; Scarlett v. Academy of Music, 46 Md. 132; N. C. R. R. v. Leech, 4 Jones, L. R. 340; Braddock v. Phila. M. & M. R. R., 45 N. J. L. 363; P. & L. R. R. v. Stewart, 41 Pa. 54; Caley v. P. & C. R. R., 80 Pa. 363; McCarty v. R. R., 87 Pa. 332; Rinesmith v. People's Freight Ry., 90 Pa. 262.

The alteration in the terms of the subscription paper (if any) was a change in favor of the defendant. It was in relief of himself and the other individual subscribers; and simply operated as an assent by their cosubscriber, the Pennsylvania Railroad Company, to the performance of a condition, upon which it alone had the right to insist, in a manner satisfactory to it.

OPINION BY MR. JUSTICE GREEN, October 5, 1896:

The contract, upon which this action was brought, is in writing and signed by the defendant and many others. It is a contract of subscription to the stock of the plaintiff company. It contains certain express stipulations definitely stated as to the meaning of which there is no controversy. But the defendant alleges, and so testified himself, that there were certain oral terms stated and agreed upon between him and Mr. Stewart Wood, who procured the defendant's subscription, and claims that these terms were not performed, and that he was therefore released from his subscription contract, and was at liberty to withdraw from it, and refuse to pay, which he did. The mate-

rial question in the case is whether these oral terms can be treated as a part of the subscription contract, so that their non-performance by the defendant will constitute a defense. We think not. Substantially the oral terms were, according to the allegation of the defendant, that there should be a station upon the property adjoining the property of the defendant; and that his subscription was made and taken "with a view of the old road being adopted as far as practicable." The plaintiff, in his testimony, states these two matters in this way: "There was a further agreement took place at the time I made the request for the paper, that there should be a station upon the property adjoining mine. . . . Q. What else was said to you? A. It was stipulated that my subscription should be made and taken with a view of the old road being adopted as far as practicable."

It must be confessed that the latter of these alleged stipulations was quite indefinite, and the subsequent testimony of the defendant indicated that but little consequence was attached to it. He testified that when he discovered that the station was not to be built upon the property adjoining his land, he notified the plaintiff that he would not pay his subscription, thus indicating that the inducing cause of his refusal to pay was that the station was not to be built at the place where he testified it was agreed to be built. It will be observed that it is not claimed by the defendant that these oral terms were to be inserted in the contract of subscription as a part thereof and then left out either by fraud, accident or mistake. It is simply alleged that they were additional terms of the contract made in parol. He also said that they induced him to sign the written contract. It will at once be seen that the defendant's case is subject to the fatal objection that it is supported only by his own oath, while against it, are the written contract and the flat and positive denial of Mr. Wood, the person with whom, as the defendant testifies, the parol terms were agreed upon. All the authorities concur in holding that in such circumstances the written contract prevails. There must be more than an equilibrium of verbal testimony to destroy a written contract. The principle is so familiar and the authorities are so numerous that it is unnecessary to cite them.

Independently of that consideration there is another principle and another line of decisions, which of their own force

defeat the contention of the defendant. It has been many times decided in these cases of actions upon subscription contracts, that it is not competent to defeat such a written contract by setting up agreements made in parol with the agents who procure the subscriptions. Thus in Guarantee Company v. Mayer, 141 Pa. 511, it was held that in an action to collect a subscription defendant alleged in his affidavit of defense that one of the promoters of the company called upon him, and he was induced to become a subscriber to four shares of the capital stock of the company at $50.00 per share, under the promise and agreement that such company would furnish him, for $200, eight shares of the capital, and also that the company would establish offices in New York and Chicago, and that upon the faith of these representations he was induced to sign the paper subscribing to the stock. Upon a rule for judgment for want of a sufficient affidavit of defense judgment was entered for the plaintiff and this judgment was affirmed.

In the case of Miller v. Railroad, 87 Pa. 95, which was an action to recover the amount of a subscription to the stock of a railroad company, the defendant offered to prove on the trial that he was induced to subscribe by reason of certain parol representations made to him by officers of the company that the road should be built, not as stated in the subscription book, but along defendant's house, and upon the east side of the river, and that he would not be obliged to pay until the road was built. We held that this evidence was properly rejected. Mr. Justice GORDON, delivering the opinion, said, "Now as we have already shown, this subscription was especially designed to carry out a common adventure, in which the company was but a means used for its accomplishment, and the interests of which were but secondary; hence it follows that if Miller succeeded in avoiding his obligation, he does so at the expense of his cosubscribers, and in fraud of their rights. Every one who signed after him did so on the faith of his signature, as he did upon the faith of the signatures of those who preceded him, and to permit him now to set up a secret parol arrangement, by which he may be released whilst his fellows continue to be bound, would be anything but just. As was said in the case of Graff v. Railroad Company, 31 Pa. 489 (per WOODWARD, J.), 'a subscription to a joint stock is not only an undertaking to the

company, but with all other subscribers. Such contracts are trilateral, and even if fraudulent as between two of the parties, they are to be enforced for the benefit of the third.' This quotation expresses a principle applicable to the case in hand, and aptly illustrates the reason why the defendant should be estopped from setting up the secret parol agreement between himself and the agents of the company." Precisely the same considerations are applicable to the present case. Here is a contract purporting to be signed, and actually signed, by a considerable number of persons who were jointly interested in the building of a railroad in their vicinity, by which they all agree to subscribe the sums set opposite their names, the subscriptions to become binding when $100,000 have been subscribed by others than the Penna. R. R. Co. All the other signers are interested in the defendant's subscription. If he is to be released from his subscription because of a secret parol agreement made with the agent who procured the subscriptions, and which is not expressed in the written contract signed by all, it would be a clear fraud upon the others, and therefore under the decision in Miller v. Railroad, last cited, he is estopped from setting up such an agreement.

In McClure v. Peoples' Freight Railway Co., 90 Pa. 269, which was an action on a railroad subscription contract, the covenant was to pay money on call. On the trial the defendant offered to prove an oral agreement that he might pay in labor and materials, without offering to show that he attempted to ascertain when and where he could do so. Mr. Justice TRUNKEY, delivering the opinion, said, " When the call was made it was his business to pay according to his contract, and, instead of that, he did nothing. Under the alleged oral agreement he may not have been bound to tender materials and labor, but the call was enough to put him on inquiry when and how they would be received. The court was right in holding that if the offers set out in the first and second assignments were received, they would not amount to a defense. It is not admissible to contradict or materially change a written contract, save for fraud, accident or mistake, of which no evidence was offered: Martin v. Berens, 67 Pa. 459."

So in the present case there was neither fraud, accident nor mistake in omitting this alleged oral agreement as to the place

where the station was to be built, or how near the road should conform to the old roadbed. According to the defendant's own testimony it was the mere representation of the agent who procured the subscription that he, the defendant, acted upon in making his subscription. Under the decisions just cited such representations would not constitute a defense even if they were actually made. But they are denied by the positive testimony of the agent, and therefore they cannot be permitted to overcome the plain terms of the written contract, for want of sufficient evidence to support them.

The cases of Caley v. Railroad, 80 Pa. 368 ; Plank Road Co. v. Arndt, 31 Pa. 319, and Indiana & Edensburg Turnpike Co. v. Phillips, 2 P. & W. 196, are inapplicable as they were cases in which the written terms of the contract were violated so as to prevent recovery.

It was also contended for the defendant that the contract was violated to his prejudice, because rights of way were purchased by the company contrary to the provisions of the contract. It is a complete answer to this contention that the proviso was for the benefit of the Pa. R. R. Co., who were not to be called upon to supply funds to complete the road unless the parties in interest other than that company should secure the right of way free of cost to the company. But the Pa. R. R. Co. actually did furnish the money to complete the road, including $27,000 for rights of way, notwithstanding this provision, taking stock and bonds of the plaintiff for their advancements, and the plaintiff was not obliged to use any part of the $100,000 subscriptions to pay for rights of way. The defendant therefore has nothing to complain of in this respect. The defendant was not at liberty to revoke his subscription by his letter of June 12, 1893, because by the 30th of May preceding the full amount of $100,000 had been subscribed.

The assignments of error are not sustained.

Judgment affirmed.