### Braddock Electric Railway Company, Appellant, *v.* Charles Bily.

*Corporations—Stock subscription—Release—Ultra vires.*

A subscription to stock of a railway company is an undertaking not only with the company and the commonwealth but with all the other subscribers to the stock. It is not within the power of the officers of the corporation to release such subscription without a sufficient consideration. The rights of other stockholders and bondholders are vested in the subscription.

Defendant subscribed to twenty shares of stock, par value $50.00; he had paid an instalment of $5.00 and resisted a call for a second instalment al-

leging a release to be inferred from the fact that he had received a paid-up certificate for two shares. *Held*, that plaintiff, if he had asked for them, would have been entitled to binding instructions and that no release could be inferred from the delivery of. the certificate, such release, even if intended, being ultra vires.

Argued April 25, 1899. Appeal, No. 208, April T., 1899, by plaintiff, from judgment of C. P. No. 2, Allegheny County, Oct. Term, 1895, No. 424, on verdict for defendant. Before RICE, P. J., ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEEBER, J.

Assumpsit. Before WHITE, P. J.

It appears from the evidence that the Braddock Electric Railway Company, the plaintiff in this case, was incorporated June 9, 1890, under the act of May 14, 1889.

Some time after its incorporation and after a number of branches and extensions from its route had been made, Charles Bily, the defendant, subscribed for and paid the first instalment of $5.00 per share, on twenty shares of the capital stock of the company, which had a total capital stock of $100,000 divided into 2,000 shares of the par value of $50.00 each.

The road was constructed in 1891, 1892 and 1893, and a part in 1895. In 1895, the defendant was called upon to pay the second instalment of $5.00 per share, or in all $100 on his twenty shares of stock, and failing and neglecting to make the payment suit was brought before a justice of the peace for the collection of the amount and judgment obtained.

The court charged the jury in part as follows:

[Of course, if he is liable to pay this, he would be liable to pay all the subsequent assessments that may be made, so that he would have to pay up the $50.00 a share on his twenty shares, which would be $1,000. Having paid $100, if he is liable at all, he would be liable to pay the other $900 by subsequent assessments.] [1] . . . .

[Why was this issued to him? I say that there is no explanation by these officers, or any other testimony, as to why this certificate was issued to him; and it could only be issued to him on the ground that the company was willing to take the $100 that he had paid and give him two shares of stock for that

$100, and the fair inference would be that he was released from the payment of the other, virtually that they gave him two shares of stock and the company retained the other eighteen shares and could sell them to anybody.] [2] . . . .

[If there were creditors that had claims against the corporation, the board of directors could not release a subscriber to the prejudice of creditors. But Mr. Sailor says that the whole of this stock has been paid in full and certificates issued for all the shares, except these eighteen shares; he says further that the road is not in debt; that there is no floating debt. There are no creditors, therefore, that need this money. He says there is a bonded indebtedness of $41,000, not one half of the capital stock, and I suppose that bonded indebtedness is secured by a mortgage and probably has a number of years yet to run. Now, if there is no indebtedness, no creditors that would be prejudiced by it, I cannot see why the corporation might not release a subscriber from the amount of his subscription and give him a paid-up certificate for what he had paid in.] [3]

[If you believe, gentlemen, from the testimony before you, that, when this certificate was issued by the company, the understanding was that he was to be released from any future payments, and that he was to have these two shares for the $100 he had paid in, and the company took back the other eighteen shares and released him from the payment of it, your verdict ought to be for the defendant.

Bearing on the case we have this testimony of Mr. Sailor, who has been the president of the company all the time since its organization. The company commenced to build the road in 1891, and, according to the admission of Mr. Ellis, the secretary, began to run cars in April, 1892, and some other portions of it may have been completed afterwards, so that at the time this certificate was issued, the road was completed.] [4]

[Mr. Sailor himself owned a good deal more than one half of the stock. According to the subscriptions, as I understand them, as entered in his store book, there were 1,005 shares of stock subscribed for, and Mr. Sailor took 500 of them, so that there were only 505 shares of stock subscribed by other persons than Mr. Sailor, and that was only five shares over one half of the full capital stock—2,000 shares—and after that Mr. Sailor

took the other 995 shares; so that Mr. Sailor, according to that testimony, if I understand him correctly, owned all the stock of that road except 505 shares, and he says all that stock was paid up.] [5]

[Now, what was this money for, to be collected from Mr. Bily? According to the evidence it was not necessary to pay debts. It would, of course, go to these other stockholders, mainly to Mr. Sailor, and, if they agreed to release him, I think they had power to do so, when it did not prejudice the rights of any creditors.] [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–6) to portions of the judge's charge, reciting same.

*W. T. Tredway*, with him *H. E. Linneaweaver*, for appellant. —If he had any understanding or agreement with the officers of the company that he was to be released, that might give him a right of action against such officers, but it would afford him no defense in a suit against him for the instalment due on his subscription for twenty shares of stock: Railroad Co. v. Conway, 177 Pa. 364.

To like effect is Graff v. Railroad Company, 31 Pa. 489, where it is said, "A subscription to a joint stock is not only an undertaking to the company, but with all other subscribers. Such contracts are trilateral."

No resolution by the board of directors releasing the defendant from his subscription was alleged, proven or pretended by the defendant, and if there had been it could not have availed him as a defense. It would have been a fraud on the commonwealth, the bondholders of the company, holding $41,000 worth of its bonds, and upon the other stockholders of the company. The issue of the two shares of stock to the defendant was clearly illegal and not binding upon the company and therefore without merit as a defense.

*Charles W. Dahlinger*, for appellee.—The books of the company show the account of Mr. Bily to have been closed. The account shows a credit of $100, and a debit for the same amount, and on the subscription book opposite Mr. Bily's name are the

figures 169, which Mr. Sailor admits refers to the page in the ledger on which Mr. Bily's account is entered, being the account already referred to. This is the only account which the company had with Mr. Bily and shows that it treated the matter as closed.

There are many cases on laches where the facts are similar to the present one, but defendant submits the following as one of a class which he thinks governs the one at bar. It is Hilliard v. Wood Carving Co., 173 Pa. 1.

Defendant submits that the certificate having been sealed with the corporate seal of the company, and being the act of the corporation the present officers cannot now claim any further instalments on account of the original subscription.

Opinion by Beeber, J., July 28, 1899:

In February, 1891, the defendant subscribed to twenty shares of stock of the plaintiff company of the par value of $50.00 each, and at the time of the subscription paid an assessment of $5.00 per share upon them, amounting in all to $100. A short time thereafter he received notice of a second assessment of the same amount, to recover which assessment this suit was brought. Some time in February, 1893, a certificate of the plaintiff company for two shares of stock was delivered to the defendant, duly signed by the president and by the secretary with the corporate seal attached. There was no evidence to explain why this certificate was given. The defendant says that he never asked for it, and he does not even pretend that when it was delivered to him any agreement was made to release him from his liability to pay for the balance of the stock for which he had subscribed. The second, third and fourth assignments of error are to that part of the charge of the learned trial judge in which he said that the jury could find, from the delivery of this certificate for two shares of stock to the defendant, that the company had agreed to release him from the payment of the balance of his shares, there being no creditors that could be prejudiced thereby.

We think the court erred in the instructions complained of in these assignments. By his subscription the defendant not only made a contract with the company, but with the other stockholders. It is well settled that subscriptions to the stock

of a corporation are trilateral contracts. They are undertakings not only with the company and the commonwealth, but with all the other subscribers to the stock: Graff v. Pittsburg & Steubenville R. R. Co., 31 Pa. 489. It appears in the evidence in this case that the plaintiff had a bonded indebtedness of $41,000. It also appears that there were more than twenty other stockholders, in addition to the president and secretary of the company. Under such circumstances we do not think it was within the power of the president and secretary, nor within the power even of the board of directors, to release the subscription of the defendant to the stock of the company without a sufficient consideration. The assets of the company cannot be given away even by the directors, because it would be in violation of their duty to preserve them which they owe to all the other stockholders, to the bondholders and to the company itself: Bedford R. R. Co. v. Bowser, 48 Pa. 37. Even though we assume, as the learned trial judge did, that a mortgage was given as collateral security for this bonded indebtedness, it by no means follows that the property pledged in the mortgage would be of a value sufficient to pay the bonds. The bondholders, even though a mortgage has been given to secure their bonds, are still creditors of the plaintiff. It was therefore error for the court to say that the jury might infer an agreement to release the defendant from the payment of the balance of his stock simply because of the delivery to him of the certificate for the two shares. The defendant himself does not say that there was any such agreement, and it would avail him nothing if he did, for, as we have seen, such an agreement would be invalid, and if an agreement to do such a thing would be invalid, an inference that there was such an agreement must be immaterial. These assignments are sustained.

The fifth and sixth assignments are to that part of the charge which mentioned to the jury the number of shares subscribed and paid for by the president, and stated to it that the subscription of the defendant, if collected, would go to the other stockholders and mainly to the president. We think it was error to charge the jury to this effect. It is immaterial and irrelevant how many shares the president owned, and it is clearly wrong to say that the money sought to be recovered from the defendant would go to the other stockholders and mainly to the president.

It would go to the company itself.    It was likewise wrong to say that if the president and the other stockholders agreed to release the defendant they had the power to do so, for there was no evidence whatever that there was any such agreement, and even if there had been, as we have already shown, it would be invalid under the facts in this case.    Besides there is no evidence at all that any of the more than twenty other stockholders ever agreed to release the defendant.    We sustain these assignments.

The first assignment is to that part of the charge of the learned trial judge in which he told the jury that if the defendant was liable at all he would be liable to pay the whole of the unpaid balance of the subscription.    Whilst it might be properly said that it is immaterial to a proper decision of the issue in this case whether this is so or not, the truth of the statement is so evident that we do not think it can be said to be error for the court to make it to the jury.    This assignment is overruled.

In our opinion, from a survey of the whole evidence, this was a case for binding instructions in favor of the plaintiff but inasmuch as the plaintiff did not ask for such instructions it cannot be said to be reversible error for the court not to have given them.

Judgment reversed and venire facies de novo awarded.