## In re EUREKA FURNITURE CO.

(District Court, E. D. Pennsylvania. May 17, 1909.)

### No. 2,387.

1. CORPORATIONS (§ 247*)—STOCKHOLDERS—LIABILITY TO CREDITORS ON UNPAID SUBSCRIPTION—ATTEMPTED RELEASE FROM SUBSCRIPTION.

One who subscribed for stock of a corporation, assisted in its organization, and became its secretary, acting as such at the time the corporation took over the property and business of a partnership at an agreed valuation and assumed its debts, and who prepared the papers therefor without inquiry as to the facts or value of the property, cannot avoid liability on his subscription to creditors on the ground that the corporation was defrauded in the purchase, nor can he be released from his subscription by the other stockholders except subject to the rights of creditors.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 247.*

Stockholder's liability to creditors in equity, see notes to Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.]

2. BANKRUPTCY (§ 250*) — COLLECTION OF ASSETS — POWER TO ORDER ASSESSMENTS ON UNPAID SUBSCRIPTIONS TO STOCK OF BANKRUPT CORPORATION.

A court of bankruptcy has power to order assessments on unpaid subscriptions to the stock of a bankrupt corporation.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 250.*]

In Bankruptcy. On certificate of referee.

Samuel Scoville, Jr., and Harris S. Sparhawk, for trustee.

Furth & Singer, for Morris L. Zimmerman and Alexander J. Brian.

J. B. McPHERSON, District Judge. The two orders of the referee, each dated June 30, 1908, with reference to the unpaid stock subscriptions of Morris L. Zimmerman and Alexander J. Brian, respectively, are hereby affirmed for the reasons given by the learned referee (Joseph Mellors, Esq.):

Sur rule to show cause why stockholders should not be assessed.

### Certificate of Referee.

To the Honorable the Judges of the Said Court:

The undersigned, referee to whom the matter entitled as above was referred, respectfully certifies:

This matter is before the referee upon petition of trustee for rule to show cause why Alexander J. Brian, Mark M. Dintenfass, David H. Cohen, and Morris L. Zimmerman should not be assessed in the sum of four dollars, fifty and seventy-six hundredths cents ($4.50$^{76}$/$_{100}$) on each share of stock of the Eureka Furniture Company, Inc., subscribed to by them.

This rule was made absolute against Mark M. Dintenfass, and a judgment has been entered against him in the court of common pleas.

As to David H. Cohen, the trustee has never been able to obtain service on him.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

An answer was filed on behalf of Alexander J. Brian and Morris L. Zimmerman, which practically admits all the substantial facts set forth in the petition for the rule, which are as follows:

### Findings of Fact.

The Eureka Furniture Company, Inc., was adjudicated a bankrupt on the 13th day of December, 1905, and on the 3d day of February, 1906, Charles E. Schwartz was elected trustee of the bankrupt's estate.

The total amount of claims filed and allowed against the said estate, amount to $17,028.18, and the statutory time for filing claims has long since expired. There has been one dividend of 15 per cent. paid on said claims, leaving due thereon $14,473.95.

The trustee has now in his hands a balance of funds applicable to the payment of these claims, amounting to the sum of $951; said balance being also subject to the payment of costs, disbursements, commissions, and counsel fees.

The only remaining assets of this estate are certain book accounts, which are not collectible, and unpaid subscriptions to the stock of said bankrupt.

The said company was chartered under the laws of Pennsylvania July 20, 1905, with a capital stock of $50,000, divided into 5,000 shares of $10 each.

The original subscribers to the stock of said company and the amount subscribed for by each are the following:

Alexander J. Brian, ........................................750 shares.
Mark M. Dintenfass, ........................................750 shares.
David H. Cohen, ........................................750 shares.
Morris L. Zimmerman, ........................................750 shares.

There is due on said subscriptions of Alexander J. Brian the sum of $7,500, by Mark M. Dintenfass the sum of $7,500, and by Morris L. Zimmerman the sum of $7,500.

None of the facts as to the subscription to the stock or the sum of the call are denied, but the answer alleges that both Brian and Zimmerman were induced to subscribe to this stock by false and fraudulent representations. These fraudulent representations were alleged to have been made by David H. Cohen, and were in effect that the business of the Eureka Furniture Company was worth $25,000, and that the business yielded a net profit of $10,000 per annum. The time and place of making these representations is not given. It is undenied that the stock was subscribed for by Brian and Zimmerman on July 20, 1905. The answer goes on to allege that on a date (not fixed), but prior to the 19th day of September, 1905, Brian and Zimmerman discovered that the business of the Eureka Furniture Company was not worth $25,000, but was hopelessly insolvent, and that thereafter Cohen, Dintenfass, Brian, and Zimmerman agreed that Brian and Zimmerman should be released from their subscriptions, and that at the first meeting of the stockholders Brian and Zimmerman were formally released from their subscriptions.

Admitting all of the allegations of the answer, they do not constitute a defense to the petition or any sufficient reason why the prayer of the petition should not have been granted. The testimony offered in support of the allegations of the answer, moreover, shows a state of facts which by no means support the contention of the respondents. At the hearing of the issues framed by the petition and answer, Zimmerman did not appear at all and offered no testimony, and there is no question that as to him the rule should have been made absolute. Brian testified vaguely as to statements made to him by a certain Cohen as to the worth of the business of the Eureka Furniture Company, that on the faith of these representations he subscribed for 750 shares. Brian is a member of the bar, and presumably acquainted with business affairs, but testified that he subscribed to the stock on July 20, 1905, but never examined the stock or the books of the company, and made no investigation at all of the company until some months afterwards. He further testified that, although he became aware that the company was a fraudulent affair, he nevertheless acted as secretary at the first meeting of the corporation, and the minutes of all meetings of the corporation were kept in his handwriting. The minute book was offered in evidence, and at the first meeting it appeared that an election of officers was held and that Brian participated in this meeting before any resolution was passed absolving him from any liability. It appeared that the Eureka Furniture Company, Inc., took over the old business

of the Eureka Furniture Company, a partnership, taking over its assets and assuming its liabilities, and that, despite the statement of Brian in his answer that the corporation had no creditors at the time of the first meeting, a bill of sale was offered in evidence in his handwriting containing a list of the creditors of the partnership assumed by the corporation bearing date of the first meeting of the corporation. This bill of sale shows that there were $5,000 of accounts payable by the corporation. It further appears that Brian in his own handwriting made at the first meeting stated that Cohen sold to the corporation stock, fixtures, book accounts, good will, etc., of the net value, exclusive of the good will, of $20,694.52, and that the corporation paid therefor the sum of $21,000, of which $8,000 was paid in cash and $13,000 in stock. No investigation was made of these facts, and the respondent never even examined the stock or the books of the corporation. Some months later he became convinced that the corporation was insolvent. He attended the first meeting of the corporation, of which he is one of the incorporators, and acted as the secretary of the meeting, conducted the election of the officers, wrote the minutes of this and subsequent meetings in his own handwriting, and spread on the record that the business of the partnership was worth about $20,000, and allowed the corporation to purchase it for $21,000 without a word of protest, and prepared a bill of sale setting forth the list of creditors taken over by the corporation, and then had a resolution introduced purporting to release himself and Zimmerman from any liability for the stock subscription. The authorities hold that under such a state of facts the liability on his stock subscription is not released.

The Supreme Court has passed on a case which is on all fours with the facts herein, in the case of Hilliard v. Allegheny Co., 173 Pa. 1, 34 Atl. 231. The headnote shows the facts of that case and the decision of the Supreme Court as follows:

"A stockholder who is secretary of a corporation, who through possession of the minute book, or from other sources. has full and complete knowledge of the organization of the company and the details of the business, cannot, after a year and a half and after the company has become insolvent, set up as ground for a claim against the officers of the company who sold him his stock that he was induced to buy it on false and fraudulent representations upon their part and that the company had been fraudulently organized."

The case of Howard v. Turner, 155 Pa. 349, 26 Atl. 753, 35 Am. St. Rep. 883, holds emphatically that a contract to take and pay for stock in an action made in consequence of a fraudulent prospectus is voidable only and not void, and can only be avoided subject to the rights of creditors.

In the case at bar the gross laches of the respondent certainly does not give him any standing to avoid this contract. A party who is a trained member of the bar and yet accepts the vague allegations of a person as to the assets and liabilities of a partnership without ever examining the books or making any investigation of the stock of the company cannot afterwards avoid the contract when the rights of creditors have intervened.

Moreover, the decisions are unanimous that officers of a corporation have no power to release a subscriber from his subscription without a valuable consideration. To this effect are the cases of Graff v. Railroad, 31 Pa. 489; Bedford v. Bowser, 48 Pa. 37; Railroad v. Conway, 177 Pa. 364, 35 Atl. 716; Janette Bottle Works, v. Schall, 13 Pa. Super. Ct. 96; Garrett v. Railroad, 78 Pa. 465; Bolt Works v. Schultz, 143 Pa. 256, 22 Atl. 904; Muncy Co. v. Green, 143 Pa. 269, 13 Atl. 747.

As to the power of the District Court to order assessment for unpaid subscriptions, see In re Miller Electric Co. (D. C.) 6 Am. Bankr. Rep. 791, 111 Fed. 515.

A subscriber cannot be released from subscription to stock without consent of stockholders, corporation and power creating. Railway Co. v. Bily (1899) 11 Pa. Super. Ct. 144.

A subscription to stock of a railway company is not only an undertaking with the company, but with the other stockholders and the commonwealth. It is not within the power of the officers to release subscriber without a valuable and sufficient consideration.

In Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220, the Supreme Court of the United States held:

"The amount of the unpaid subscription to the stock of the corporation is a trust fund for the payment of its debts. It is a substitute for the personal' liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation for their security. Unpaid stock is as much a part of this pledge, and as much a part of the assets of the company, as the cash which has been paid upon it. Creditors have the same right to look to it as to anything else, and the' same right to insist upon its payment as upon the payment of any other debt due to the company." As regards the creditor, there is no distinction between such a demand and any other asset which may form a part of the property and effects of the corporation. In re Remington, etc., Co. (D. C.) 9 A. B. R. 538, 119 Fed. 441.

That corporate stock subscriptions are a primary fund for the payment of the corporate debts is well settled and not disputed, but a call is necessary before unpaid subscriptions can be collected. In re Bottling Co. (D. C.) 3 Am. Bankr. Rep. 195, 96 Fed. 945.

The referee is therefore of opinion that the order made upon Alexander J. Brian and Mark M. Dintenfass to pay to the trustee in bankruptcy their unpaid subscriptions to the stock of this company was properly made.

Joseph Mellors, Referee in Bankruptcy.

### Decree.

And now, to wit, this 30th day of June, A. D. 1908, on the petition of Charles E. Schwartz, the trustee in bankruptcy of the estate of said bankrupt, and on the order to show cause dated November 14, 1907, signed by Joseph Mellors, referee in bankruptcy, why Alexander J. Brian, Mark M. Dintenfass, David H. Cohen, and Morris L. Zimmerman should not be assessed in the sum of $4.5076 on each share of stock of the said bankrupt company subscribed to by them, and it appearing that personal service of said order to show cause has been made on said Morris L. Zimmerman, and that he has subscribed and not paid for 750 shares of stock of said bankrupt,· and an answer having been filed and testimony having been taken, and after hearing Samuel Scoville, Jr., Esq., for the petition, and Emanuel Furth, Esq., in opposition, and after due deliberation had,

It is ordered and decreed that Morris L. Zimmerman is liable in the sum of $4.5076 on each share of 750 shares of the stock of said Eureka Furniture Company, Ltd., subscribed for by him, and that each share of stock subscribed for by him be assessed in said sum, and that he is liable in the sum of $3,380.70 on his said subscription to the trustee of the estate of said Eureka Furniture Company, Inc., bankrupt, in said sum, and that he make payment thereof to Charles E. Schwartz, trustee in bankruptcy of the Eureka Furniture Company, Inc., bankrupt, at his office within one week from the date of this order, and on or before the 7th day of July, A. D. 1908; said subscription when paid and collected to become part of the assets of the said bankrupt estate, and to be accounted for and distributed under the orders of said court. In default of such payment, Charles E. Schwartz, trustee of the estate of said bankrupt, is hereby authorized and directed to institute such proceedings against said Morris L. Zimmerman as are necessary to recover the said sum due by him on said stock either at law or in equity.

[Signed] Joseph Mellors, Referee.

### Decree.

And now, to wit, this 30th day of June, A. D. 1908, on the petition of Charles E. Schwartz, the trustee in bankruptcy of the estate of said bankrupt, and on the order to show cause dated November 14, 1907, signed by Joseph Mellors, referee in bankruptcy, why Alexander J. Brian, Mark M. Dintenfass, David H. Cohen, and Morris L. Zimmerman should not be assessed in the sum of

\$1.5076 on each share of stock of the said bankrupt company subscribed to by them, and it appearing that personal service of said order to show cause has been made on said Alexander J. Brian, and that he has subscribed and not paid for 750 shares of stock of said bankrupt, and an answer having been filed and testimony having been taken, and after hearing, Samuel Scoville, Jr., Esq.. for the petition, and Emanuel Furth, Esq., in opposition, and after due deliberation had,

It is ordered and decreed that Alexander J. Brian is liable in the sum of \$4.5076 on each share of 750 shares of the stock of said Eureka Furniture Company, Ltd., subscribed for by him, and that each share of stock subscribed for by him be assessed in said sum, and that he is liable in the sum of \$3,380.-70 on his said subscription to the trustee of the estate of said Eureka Furniture Company, Inc., bankrupt, in said sum, and that he make payment thereof to Charles E. Schwartz, trustee in bankruptcy of the Eureka Furniture Company, Inc., bankrupt, at his office within one week from the date of this order, and on or before the 7th day of July, A. D. 1908; said subscription when paid and collected to become part of the assets of the said bankrupt estate, and to be accounted for and distributed under the orders of said court. In default of such payment, Charles E. Schwartz, trustee of the estate of said bankrupt, is hereby authorized and directed to institute such proceedings against said Alexander J. Brian as are necessary to recover the said sum due by him on said stock either at law or in equity.

[Signed]    Joseph Mellors, Referee.