# Keystone Wrapping Machine Company v. Bromeier, Appellant.

*Corporations—Subscription contracts—Evidence—Parol evidence.*

1. A subscriber to a subscription contract cannot change the character and effect of the paper by his own uncorroborated oral testimony.

2. A subscription to the stock of a corporation is not only an undertaking with the company, but with all the other subscribers. Such a contract is trilateral and even if fraudulent as between two of the parties it may be enforced for the benefit of the third.

3. A person who subscribes to the stock of a corporation becomes a stockholder as soon as the company has accepted his offer, and it is immaterial that no certificate representing the shares subscribed for has been made out or delivered to him.

*Corporations—Foreign corporations—Registration.*

4. Where a foreign corporation brings an action of assumpsit in the county of Allegheny, and in its statement of claim avers that it is a foreign corporation, and that it has duly registered in Pennsylvania, and this averment has not been denied in the affidavit of defense, the corporation is not bound at the trial affirmatively to prove its registration.

*Conflict of laws—Evidence—Stock subscription—Corporations.*

5. Where a foreign corporation sues in Pennsylvania on a stock subscription and the paper on its face shows that the agreement is to sell the stock for less than its par value, the burden is upon the plaintiff to show affirmatively that the law of the state in which the plaintiff was organized permitted a sale of stock on such terms. If no proof of foreign law is offered the court will assume that the foreign law is the same as the Pennsylvania law, and that the contract is an illegal one.

6. The law of another state will be presumed to be the same as that of the forum, in the absence of evidence of the contrary.

Argued April 15, 1909. Appeal, No. 43, April T., 1909, by defendant, from judgment of C. P. No. 2, Allegheny Co.,

Oct. T., 1904, No. 1,764, on verdict for plaintiff in case of Keystone Wrapping Machine Company v. Charles H. Bromeier. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit on stock subscription. Before SHAFER, J.

At the trial the plaintiff offered in evidence the stock subscription which was as follows:

"KEYSTONE WRAPPING MACHINE COMPANY.
"INCORPORATED
"Capital Stock $500,000.00. Par Value of Shares $25.00 Each
"Main Office, 32–33 Schmidt Building, Pittsburg, Pa.

"J. H. Felmlee, President,          Order No. ..........
"J. C. Thoburn, Secretary,          Shares 50.
"U. G. Vogan, Treasurer.            Amount 937.50
                                    "June 30th, 1903.

"I, C. H. Bromeier hereby subscribe for fifty shares of the fully paid and non-assessable capital stock of the Keystone Wrapping Machine Company, at the price of eighteen and seventy-five 100 ~~Dollars~~ per share, for which I agree to pay as follows:          Dollars ~~being fifty per cent~~ with this subscription, and the balance in two equal installments, two and four months from date.

                    "Name C. H. BROMEIER.
                    "Address 204 Fifth Ave.
"LAWRENCE, JOHNSON & CO.,
          "Financial Agents,
"32–33 Schmidt Bldg., Pittsburg, Pa.

"Note—Make all checks payable to Keystone Wrapping Machine Co."

Objected to as incompetent, irrelevant and immaterial, for the following reasons: First, because it does not show to whom it was made. Second, because it does not show what amount of money, if any, was to be paid, nor the terms of payment. Third, because if it is a subscription, it must be completely in writing, and cannot be added to by parole evidence. Fourth, because it does not agree with the copy

386 KEYSTONE W. MACH. CO. *v.* BROMEIER, Appellant.

Statement of Facts—Opinion of the Court.    [42 Pa. Superior Ct.

sued on and attached to the statement. Fifth, because it is an illegal and ultra vires contract, being a sale of the original stock of the corporation for less than par value.

Objection overruled.

To which ruling defendant's counsel excepts, and at his request exception is noted, and bill sealed. [4]

Verdict and judgment for plaintiff for $1,176.55. Defendant appealed.

*Errors assigned* amongst others were (1) binding instructions for plaintiff and (4) ruling on evidence, quoting the bill of exceptions.

*James G. Hays*, for appellant.—Proper registration in this state was a condition precedent to plaintiff's right to recover, and it was bound to prove it as a part of its case: Phœnix Silk Mfg. Co. v. Reilly, 187 Pa. 526; Steel Tube Co. v. Riehl, 9 Pa. Superior Ct. 220; Delaware River Quarry, etc., Co. v. Pass. Ry. Co., 204 Pa. 25; West Jersey Ice Mfg. Co. v. Armour & Co., 12 Pa. Superior Ct. 443; Chicago Bldg. & Mfg. Co. v. Myton, 24 Pa. Superior Ct. 16; Galena Mining, etc., Co. v. Frazier, 20 Pa. Superior Ct. 394.

If the facts were such as to bring into the case the law of another state, the statutes should have been specially pleaded, and full compliance alleged: Spellier Electric Time Co. v. Geiger, 147 Pa. 399; Hanley v. Donoghue, 116 U. S. 1 (6 Sup. Ct. Repr. 242); Burnett v. R. R. Co., 176 Pa. 45.

*Charles A. Woods*, for appellee.

Opinion by Head, J., March 3, 1910:

The defendant having admitted the genuineness of the signature attached to the instrument sued on, it is clear he could not successfully assail the integrity of the paper by his own testimony alone. "It has been many times decided in cases of actions upon subscription contracts, that it is not competent to defeat such a written contract by setting up agreements made in parol with the agents who procure the

subscriptions:" Railroad Co. v. Conway, 177 Pa. 364. As the defendant was not able to come up to the standard of the proof required by law in this respect, his effort by his testimony to change the character and effect of the paper he had signed was unavailing. It remained, therefore, as a binding obligation according to its tenor and effect. His failure in this respect destroyed the only defense on the merits disclosed in the several affidavits of defense filed. There remain to be considered several legal propositions urged upon us by the learned counsel for the appellant.

The agreement was written on a blank prepared for that purpose. It plainly in terms purports to be a subscription by the defendant for fifty shares of the capital stock of the plaintiff company. The objection that the paper does not disclose the amount of money which the defendant agreed to pay for the stock subscribed for we pass by without further comment than to say that no court, construing the writing, could fairly reach any other conclusion than that the defendant had subscribed for fifty shares of the capital stock at the rate of $18.75 per share, making the aggregate amount of his subscription $937.50.

The nature of such an agreement has been well settled. "A subscription to a joint stock is not only an undertaking to the company, but with all other subscribers. Such contracts are trilateral, and even if fraudulent as between two of the parties, they are to be enforced for the benefit of the third:" Graff v. Railroad Co., 31 Pa. 489; Railway Co. v. Bily, 11 Pa. Superior Ct. 144. We need not we think stop to consider the proposition that a subscriber to the stock of a company may withdraw his offer before it has been accepted, because in this case there was ample evidence, and it was uncontradicted, that the company had accepted the offer in a manner recognized by the law, so that the defendant had become in law and in fact a stockholder of the plaintiff company although no certificate representing the shares subscribed for had been made out or delivered to him. The certificate was not the thing subscribed for. It is but the convenient and usual evidence of the relation created by the

act of subscription and its acceptance by the corporation: Cook on Stockholders (3d ed.), sec. 192.

This brings us to a consideration of the two questions more particularly relied on by the appellant. It is first argued that it having appeared that the plaintiff was a corporation organized under the laws of the state of West Virginia, it could not maintain an action on the contract in suit because it did not affirmatively prove as part of its case in chief that it had complied with the requirements of the law of this commonwealth permitting foreign corporations to do business in this state. The answer to this is twofold. The plaintiff had averred in its statement that it was "a corporation duly organized under the laws of the state of West Virginia and lawfully doing business in the state of Pennsylvania after having registered," etc. This averment there was no attempt to deny in any one of the three affidavits filed. At the opening of the trial therefore the plaintiff offered in evidence certain averments in the statement not denied, and after the offer as originally made had been modified to meet a formal objection, it was admitted in this form without objection or exception, to wit, "The plaintiff is a duly organized corporation under the laws of the state of West Virginia and lawfully doing business in the state of Pennsylvania after having registered and complied with all the laws respecting foreign corporations." With the record in that condition, there was nothing left for the plaintiff to support by evidence because it already had a record admission, for the purposes of trial, of the truth of the facts thus averred. We need not therefore even consider whether the mere act of taking the subscription, upon which the suit is founded, was doing business in the state of Pennsylvania within the meaning of our act so as to require a foreign corporation to register.

The last position taken by the plaintiff is that the paper sued on itself discloses that the plaintiff corporation had therein agreed to sell the shares of its stock mentioned at less than the par value of the stock, and that as a consequence the contract was illegal and cannot be enforced by the corporation. We think it would be true that a Pennsylvania

corporation, contracting to sell its original capital stock, by subscription, could not lawfully agree to sell and issue such stock at a price less than its par value. Such a plan would furnish an easy method of making a fictitious issue of stock forbidden by our constitution and statutes, and our courts could not lend their aid to a corporation seeking to enforce such an executory contract. But our general corporation laws are made for the government and control of Pennsylvania corporations, not those of other states or foreign countries. The record, as we have seen, discloses the fact that the present plaintiff is a corporation of the state of West Virginia. That being so it follows that its rights and restrictions in the sale of its stock are to be properly ascertained and measured by an examination of the laws of the state which issued the charter: Ball v. Anderson, 196 Pa. 86; First Nat. Bank of Pittsburg, Kansas, v. Darlington, 30 Pa. Superior Ct. 302.

If the laws of West Virginia permit such sales, under prescribed conditions, and the present plaintiff relied on them to validate its contract, it was incumbent on it to affirmatively prove, as part of its case, the existence of the laws and the performance of the necessary conditions. In the absence of such proof, our courts cannot take judicial notice of all of the different laws obtaining in jurisdictions outside our own. "The law of another state will be presumed to be the same as that of the forum, in the absence of evidence to the contrary:" Musser v. Stauffer, 178 Pa. 99; Musser v. Stauffer, 192 Pa. 398; Bollinger v. Gallagher, 144 Pa. 205.

Nor can we discover anything in the state of the pleadings to relieve the plaintiff of the burden of making such proof before it could ask a Pennsylvania court to administer the law of another state different from our own. Had it specially pleaded the existence of such a law and the due performance of any conditions prescribed by it, the operation of rules of court in force in many sections of the state, would have imposed on the defendant the necessity of making a specific denial, or accepting the facts so averred as established. But the plaintiff having failed to plead the foreign law we are unable to see how the defendant could be denied the right to

avail himself of the legal defense he sets up.   There is much in the printed briefs of counsel to warrant the belief that further litigation will produce no substantial benefit to the defendant who failed to make good the only defense on the merits set up in his affidavits.   But we do not think it would be wise to permit such a consideration to lead us to establish a precedent that might hereafter be productive of much harm.

Judgment reversed and a venire facias de novo awarded.